HERNKE, Appellant, v. NORTHERN INSURANCE COMPANY OF NEW YORK and another, Respondents.

*June 3—June 28, 1963.*

For the appellant there was a brief and oral argument by *Henry L. Arnold* of Milwaukee.

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Clayton R. Hahn* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn.*

GORDON, J. There are five principal issues presented by this appeal. They will be considered separately.

## 1. *The Plaintiff's Negligence.*

The plaintiff argues that there is no basis for finding any negligence on his part. The plaintiff contends that he was not negligent as a matter of law. Specifically, he urges that the jury's finding that he was 30 percent negligent as to lookout is untenable.

Mr. Hernke testified as to the great care with which he observed the movements of Mrs. Last's automobile, and he also testified as to the movements of his automobile in the intersection. If the jury believed his testimony, it would be difficult to find a basis for finding that the plaintiff was 30 percent negligent as to lookout. However, the jury was not obligated to adopt Mr. Hernke's testimony; the jury was free to disbelieve some or all of Mr. Hernke's testimony and to infer from all the evidence that there was negligent lookout on the part of the plaintiff.

The finding that Mr. Hernke was negligent as to lookout is specifically supported by the fact that at the trial Mr. Hernke acknowledged that on adverse examination before

trial he had stated that he did not see Mrs. Last's vehicle before the accident. While Mr. Hernke subsequently explained that such testimony was the result of a misunderstanding, the jury was not obliged to accept such explanation. Mr. Hernke's admission supports a finding of negligence as to his lookout.

We are asked to upset the jury's finding which attributed 30 percent of the total negligence to the plaintiff. We decline to do so for the reason expressed in *Maus v. Cook* (1961), 15 Wis. (2d) 203, 206, 112 N. W. (2d) 589:

"The court is particularly loath to overturn a jury verdict on the comparison of the negligence between a plaintiff and a defendant. *Niedbalski v. Cuchna* (1961), 13 Wis. (2d) 308, 318, 108 N. W. (2d) 576. It is only in unusual fact situations that the court will disturb the jury's comparative-negligence answers. *Mullen v. Reischl* (1960), 10 Wis. (2d) 297, 305, 103 N. W. (2d) 49."

## 2. The Court's Instruction.

The plaintiff urges that the following instruction to the jury constituted prejudicial error:

"You are instructed that even though a driver approaching or who is in an intersection under such circumstances that he is entitled to the right-of-way, is bound to note the closeness and speed of the other car, if in the exercise of ordinary care, he should have noticed such, and if it is reasonably apparent that a collision is likely to occur, *it is his duty to yield* or keep his or her car at such speed to avoid interference." (Our emphasis.)

The words "it is his duty to yield" are susceptible of being construed as requiring a driver who has the right-of-way to give or yield such right-of-way to the opposing driver. In such sense the instruction is erroneous. One who has the right-of-way may lose it, but it does not follow that such right-of-way can be transferred to the other driver. *Schill*

*v. Meers* (1955), 269 Wis. 653, 659, 70 N. W. (2d) 234; *Reynolds v. Madison Bus Co.* (1947), 250 Wis. 294, 305, 26 N. W. (2d) 653.

The correct statement of duty under these circumstances is found in *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. (2d) 499, 508, 117 N. W. (2d) 666:

> "When one having the right-of-way sees a pedestrian or another car, he may assume the pedestrian or car will observe his right-of-way but if the pedestrian or car does not yield the right-of-way he is under a duty to manage and control his car so as to attempt to avoid the accident."

By instructing the jurors that Mr. Hernke had a "duty to yield," the trial court incorrectly bestowed upon Mrs. Last, who was making a left turn, a right-of-way in her favor. Mrs. Last did not have a right-of-way, nor did she acquire one. Mr. Hernke had no duty to yield to her.

No question was included in the verdict which specifically inquired as to Mr. Hernke's yielding the right-of-way. We conclude that in light of the entire set of instructions presented by the trial court the error here noted was not prejudicial.

### 3. *Adequacy of the Damages.*

The jury awarded damages of $3,000, and the plaintiff maintains that this finding is so grossly inadequate as to render the verdict perverse. He bases this contention in part upon the claim that the special damages of the plaintiff totaled $3,742.15.

The plaintiff's computation of special damages is constructed on a foundation of shifting sand. Some of the items of damage are reflected on bills which, while identified, were never received into evidence. More significantly, the alleged wage loss of $448.15 for the period from December 10, 1959, to December 30, 1960, was not proved to have

resulted entirely from the accident for which the plaintiff is suing. Exhibit 18, which reflected such loss of wages, was not received into evidence, and furthermore the record reflects that the plaintiff's absence from work was explained in only summary fashion. In some instances, his absence from work was for reasons not associated with the accident.

In addition, the estimated future medical costs of $1,358 could have been rejected by the jury. The plaintiff had a congenital anomaly of his lower back and had been involved in automobile accidents on two occasions shortly before the accident in question. The jury therefore may have decided that only a portion of the plaintiff's claimed injuries resulted from the collision that occurred on July 9, 1957, and they were warranted in assessing against the defendants only a part of the estimated future medical costs.

In this light, there is credible evidence to support the jury's verdict, and its findings must be sustained. *Ashley v. American Automobile Ins. Co.* (1963), 19 Wis. (2d) 17, 20, 119 N. W. (2d) 359; *Carstensen v. Faber* (1962), 17 Wis. (2d) 242, 249, 116 N. W. (2d) 161; *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 255, 112 N. W. (2d) 701; *Wendel v. Little* (1961), 15 Wis. (2d) 52, 55, 112 N. W. (2d) 172.

### 4. *Use of Chart and Skeleton.*

During the course of the trial the plaintiff offered as exhibits a chart of the muscles of the body and a model skeleton of a spinal column made out of plastic. The medical witness testified that the use of the two exhibits would be helpful in clarifying and explaining his testimony. Upon objection by the defendants, the trial court refused to permit the use of such visual aids. In his memorandum opinion, the trial judge stated:

"Neither the model nor the chart were admissible in evidence because they were not exact reproductions of the

plaintiff's anatomy. They were likely to give a wrong impression or create undue sympathy or prejudice on the part of the jury. There was no substantial, legitimate reason for their use."

The first reason relied upon by the trial judge would effectively bar almost all physical evidence, and we do not consider that the trial judge was justified in rejecting the chart and skeleton on such grounds.

Almost all courts have recognized that whether demonstrative evidence is to be received rests largely in the discretion of the trial judge. *Walker v. Baker* (1961), 13 Wis. (2d) 637, 651, 109 N. W. (2d) 499; Gordon, Demonstrative Evidence, 32 Wisconsin Bar Bulletin (February, 1959), p. 11. It has been observed that many people learn and understand better with their eyes than they do with their ears. It would seem that the alignment of bones and muscles is sufficiently obscure to the average juror so as to make a visual demonstration helpful. *Smith v. Ohio Oil Co.* (1956), 10 Ill. App. (2d) 67, 134 N. E. (2d) 526.

We are of the opinion that it would have been preferable for the trial court to have permitted the use of the chart and skeleton in the instant case. Its refusal to do so, however, was not prejudicial.

### 5. *The Medical Testimony.*

The plaintiff's doctors were asked in cross-examination whether the two earlier accidents would "be capable" of producing strain on the plaintiff's back. The plaintiff contends that the trial court should not have permitted such interrogation and that in effect the defendants were thereby permitted to offer medical proof based on mere possibilities. We agree that the term "be capable" must be equated with mere possibilities. However, it does not follow that it was error to have permitted such cross-examination.

The burden of proof as to injuries is upon the plaintiff, and his medical testimony in meeting such burden cannot be based on mere possibilities. *Michalski v. Wagner* (1960), 9 Wis. (2d) 22, 27, 100 N. W. (2d) 354; *Block v. Milwaukee Street R. Co.* (1895), 89 Wis. 371, 375, 61 N. W. 1101. However, a defendant in resisting such claim of injuries is not required to confine himself to reasonable medical probabilities. A defendant may attempt to weaken the claim of injuries with medical proof which is couched in terms of possibilities. Thus, it is proper to cross-examine a plaintiff's medical witness on matters which do not rise to the dignity of "reasonable medical probability."

We see no inconsistency in requiring that one with the burden of proof produce medical testimony which is based upon reasonable medical probabilities and at the same time in permitting the side which does not have the burden of proof to attempt to upset such proof by showing other relevant possibilities.

*By the Court.*—Judgment affirmed.