HAYZES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 197. Argued May 7, 1974.—Decided June 17, 1974.*
(Also reported in 218 N. W. 2d 717.)

192

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. The appeal is predicated on three claims of error: That there was not credible evidence to support the jury's finding of intent to kill; that the in-

structions to the jury and verdict should have included the lesser-included offenses of manslaughter in the heat of passion (sec. 940.05 (1), Stats.), homicide by reckless conduct (sec. 940.06), and homicide by negligent use of a weapon (sec. 940.08) ; and that the trial court abused its discretion and committed prejudicial error when it permitted two pictures of the victim's wounds and a picture showing blood on the seat of the car to go to the jury.

All of these claimed errors were preserved by timely objections to the evidence and were preserved for appeal on motions after verdict. In addition, trial counsel objected to submission of a verdict on second-degree murder. This objection, however, has not been pursued on appeal.

Although the evidence is disputed, the jury could find that the evidence was sufficient to prove murder in the first degree. Sec. 940.01, Stats., provides:

"940.01 **First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

We have recently stated in *Holmes v. State* (1974), 63 Wis. 2d 389, 401, 217 N. W. 2d 657, that "Intent . . . 'must necessarily be evidenced by the conduct of the actor and the circumstances surrounding the act.' " We said in the same case that:

" 'When one intentionally points a loaded gun at the vital part of the body of another and discharges it, it cannot be said that he did not intend the natural, usual, and ordinary consequences.' "

While Hayzes testified that the gun went off in the course of a tussle, Leech, an eyewitness to this shooting, said that Hayzes stepped back from the car, pulled something from his pocket, and the shot followed. Evelyn Mc-

Gill stated that, at about the time the shot was fired, she heard Hayzes say, "You [---] I'll get even with you." In addition, Hayzes was quoted as saying to Jackson earlier in the afternoon, "I'm gonna have my money or go to Waupun," and that he would get the money back "one way or the other." There was also evidence that Hayzes requested Dubose to get his gun, which was put into the glove compartment, for which Hayzes had the key. There was also the testimony of Linda Miller, who stated that Hayzes displayed the weapon to her and said, "[T]his is what I am going to use on him." Moore, who was in the vehicle with Jackson, said that Hayzes had the gun in his hand when he first emerged from his own automobile.

While there is conflicting evidence, the jury could conclude beyond a reasonable doubt that Hayzes formed the intent to take the life of Jackson if the money were not returned to him. The evidence is sufficient to support the verdict of first-degree murder.

Since we conclude that the evidence is clear that Hayzes planned to use a gun to regain the money from Jackson that he thought was properly his, and because there was evidence that he deliberately stepped back and shot Jackson, the question of whether lesser-included offenses should have been submitted is simplified. We have consistently held:

" 'To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge.' " *Ross v. State* (1973), 61 Wis. 2d 160, 169, 211 N. W. 2d 827.

In the same case we stated that the lesser-included offense should be submitted only if there is a reasonable doubt as to some particular element included in the higher degree of crime. In the instant case the only doubt expressed by counsel on this appeal is doubt whether the

requisite intent was shown. That doubt, if raised by the evidence at all, is so insubstantial that it is not a reasonable doubt.

Moreover, we conclude that, under any reasonable view of the evidence, the charges that counsel sought to have submitted are not lesser-included offenses. Manslaughter in the heat of passion is defined in sec. 940.05 (1), Stats.:

"940.05 **Manslaughter.** Whoever causes the death of another human being under any of the following circumstances may be imprisoned not more than 10 years:

"(1) Without intent to kill and while in the heat of passion."

This court has consistently followed the objective test laid down in *State v. Hoyt* (1964), 21 Wis. 2d 284, 290, 124 N. W. 2d 47, 128 N. W. 2d 645. We said therein:

" 'That which will constitute "the heat of passion" which will reduce what would otherwise be murder to manslaughter "is such mental disturbance, caused by reasonable, adequate provocation, as would ordinarily so overcome and dominate or suspend the exercise of the judgment of an ordinary man as to render his mind for the time being deaf to the voice of reason; make him incapable of forming and executing that distinct intent to take human life essential to murder in the first degree; and to cause him, uncontrollably, to act from impelling force of the disturbing cause rather than from any real wickedness of heart or cruelty or recklessness of disposition." ' "

A review of the evidence indicates no provocation that would lead to the suspension of the exercise of judgment by the ordinary man. The provocation arose apparently from Hayzes feeling that he had been cheated out of the proceeds of his bet. This incident, however, occurred almost four hours before the killing. During the interim Hayzes obtained the gun, made threats to third parties that this was how he was going to get Jackson, and also visited his girl friend and went shopping. Under the evidence it is unreasonable to conclude that an ordinary man

would act in the heat of passion as the result of the original provocation.

It is also argued that the provocation which arguably impelled Hayzes to act in the heat of passion was the fight which ensued at the side of the car. Again, it was unreasonable to resort to shooting under those circumstances, and the evidence supports the proposition that the gun was in Hayzes' hand when he emerged from his own car. His statement merely indicates that he did not know when the gun was transferred from his pocket.

The State Public Defender urges on this appeal that we abandon the *Hoyt* test and consider the facts subjectively as they apply to the individual defendant in this case. There is some reasonableness to this argument. However, this point has been considered at length and repeatedly by this court, and we have firmly and finally committed ourselves to the objective standard of *Hoyt. See, Bosket v. State* (1966), 31 Wis. 2d 586, 143 N. W. 2d 553; *Ameen v. State* (1971), 51 Wis. 2d 175, 186 N. W. 2d 206; *Kasieta v. State* (1974), 62 Wis. 2d 564, 572, 215 N. W. 2d 412; and, even more recently, *Marks v. State* (1974), 63 Wis. 2d 769, 218 N. W. 2d 328.

Homicide by reckless conduct is defined in sec. 940.06 (2), Stats.:

"Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin."

The other requested instruction was in respect to homicide by negligent use of a weapon as defined in sec. 940.08, Stats.:

"(1) Whoever causes the death of another human being by a high degree of negligence in the operation or

handling of a . . . firearm . . . may be fined . . . or imprisoned . . . .

"(2) A high degree of negligence is conduct which demonstrates ordinary negligence to a high degree, consisting of an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another."

Both secs. 940.05 (1) and 940.06, Stats., are degrees of negligent homicide. That is, where the death was caused without the intent to commit bodily harm, but the conduct of the actor was such that there was a high probability that someone would be killed or injured. While it would be highly probable that Hayzes' conduct as revealed in the evidence would cause death or bodily harm, the conduct was not negligent. It was intentional and done with design. The fact that a struggle first ensued and then the shooting occurred is not probative of an accidental or reckless shooting. It is rather probative of a fixed intent to get the money back by the use of a weapon if lesser force was not of avail. The evidence of intentional conduct is so overwhelming, that to view the evidence as being probative of negligence or inadvertence, even of a high degree, would be unreasonable.

The trial judge properly refused to instruct on any of these allegedly lesser-included offenses.

It is also contended that the court committed prejudicial error when it permitted the jury to see color photographs which showed portions of the murder victim's body and a photograph of the bloodstained car seat. It is argued that these photographs added nothing to the testimony, that they were cumulative in nature, and were gruesome and inflammatory. It is argued that their only purpose was to arouse the sympathy and indignation of the jury.

Whether photographs are to be allowed is a matter of discretion with the trial judge. We said in *Neuenfeldt v. State* (1965), 29 Wis. 2d 20, 32, 138 N. W. 2d 252:

"It is discretionary with the trial court to admit photographs to aid the jury in securing a clear idea of a

material situation when the photographs better show that situation than does the testimony of witnesses."

The court also stated, at page 33, that photographs should be excluded if they:

" '. . . are not substantially necessary or instructive to show material facts or conditions, and are of such a character as to arouse sympathy or indignation, or divert the minds of the jury to improper or irrelevant considerations . . . .' "

The trial judge indicated that he was admitting the photographs because they would better show a material situation than the testimony did. At the time of the introduction of the evidence, the prosecutor pointed out that photographs of the head of the victim illustrated better than mere testimony the entrance and exit wounds caused by the bullet. The trial judge accepted that argument.

There was also a photograph admitted which the trial judge felt tended to show the position of the decedent's body after the alleged crime. That photograph showed a large pool of blood on the car seat. It is true that the photographs were to a degree cumulative to the evidence given by witnesses. However, the photographs more clearly show the nature of the wounds and the trajectory of the bullet than does the testimony of the pathologist. While the photograph of the bloodstained car seat does not more clearly show the position of the decedent's body than the testimony of witnesses, it is probative. The trial judge pointed out at the time he admitted the photographs that, "The nature of the case is one of homicide and such case has to be somewhat gruesome in nature in and of itself."

On post-trial motions, he stated:

"The court did admit some photographs offered by the state. They were used in the course of the testimony, the photographs were helpful in making clear the position of the body in the vehicle after death and the nature of the

injury. The court does not feel that the photographs were superfluous, accumulative or inflammatory, and I find no prejudicial error in their reception."

The trial judge properly exercised his discretion according to the standards of *Neuenfeldt, supra.* While reasonable persons looking at the photographs as a part of a record may have differing opinions in regard to whether they were cumulative, inflammatory, or prejudicial, the judgment is essentially one to be exercised by the trial judge. He, better than anyone else, in light of the evidence, can make the determination that the photographs will assist the jury in a rational and dispassionate determination of the facts. Where a trial judge has applied the appropriate discretionary standards, this court will not reverse his decision unless it appears that, in light of the record as a whole, his conclusion was wholly unreasonable or if the circumstances indicate that the only purpose of the photographs was to inflame or prejudice the jury. The trial judge here did not commit error in admitting the photographs.

After a review of the entire record, we conclude that the jury was properly instructed, and that the defendant was well represented by counsel who made the appropriate objections and preserved alleged errors for review. No prejudicial error was committed.

*By the Court.*—Judgment affirmed.