ALLEN and wife, Plaintiffs-Appellants, v. STATE FARM
FIRE & CASUALTY COMPANY and others, Defendants-
Respondents.*

*No. 559 (1974).  Argued October 29, 1975.—Decided
February 3, 1976.*
(Also reported in 238 N. W. 2d 104.)

* Motion for rehearing denied, with costs, on April 7, 1976.

For the appellants there were briefs and oral argument by *Martin N. Sussman* of Milwaukee.

For the respondents there was a brief by *Donald J. Tikalsky* and *Hunter & Tikalsky*, all of Waukesha and oral argument by *Donald J. Tikalsky*.

DAY, J. This case involves the alleged negligence of the defendants resulting in death to the plaintiffs' daughter when she fell from a running horse owned by the defendants, and on which the deceased was riding with one of the defendants, Debra L. De Lano, at the time of the accident. The questions raised are (1) did the trial court err in failing to submit to the jury a question concerning the negligence of Niles De Lano in failing to control his daughter, Debra, such as to prevent her from riding double, bareback, on the highway with the decedent, Mary Jean Allen? (2) Did the trial court err in failing to submit plaintiffs' requested jury instruction concerning the duties of an owner to a licensee? (3) Did the trial court err in giving allegedly "abstract" jury instructions which misled the jury? We conclude that the trial court did not err in refusing to submit the requested jury question, and that any error in the jury instructions would have been harmless, even if error had occurred.

On May 4, 1972, defendant Debra De Lano, age sixteen, and the plaintiffs' daughter, Mary Jean Allen, age seventeen, rode home together on the bus from Mukwonago

High School, which they attended. Debra invited Mary to ride her horse, and they got off the school bus at the De Lano house, obtained a saddle, and went to a neighbor's barn where the horse was stabled. While the girls were in the area of the barn at approximately 4:15 p.m., Niles De Lano, the father of Debra, drove past and waved at the girls. Debra and Mary Jean rode off on County Trunk XX, with Debra in the saddle and Mary Jean riding bareback behind. At some point a truck approached them from behind, and the horse started to gallop, and then bucked, causing Mary Jean's fall and the head injuries from which she subsequently died.

The testimony was in conflict as to whether or not Mr. De Lano knew or should have known that his daughter and the decedent were going to ride the horse out onto the highway. A jury could have found that he did know or should have known of such activity. However, nowhere in the pleadings is it alleged as an act of negligence that Niles De Lano failed to control his daughter in such a way as to prevent her from riding double, bareback, on the highway with the deceased. In the complaint in this action the plaintiffs alleged among other things:

". . . that the father of said Debra DeLano knew that his daughter . . . and the decedent were riding double and were going to the home of Mary Jean Allen across the Oakdale Road and Highway 15; that the defendant, Niles DeLano, Jr., did nothing to prevent them from riding double on the horse Flicka onto the said highway."

However, this was not alleged as a specific form of negligence, in a complaint which set forth other alleged forms of negligence in great detail.[1] All of the alleged

---

[1] The complaint reads as follows:
". . . that the negligence of the individual defendants, Debra L. DeLano, and her parents, Niles DeLano, Jr. and Josephine DeLano, consisted of the following:

forms of negligence arose out of an alleged tendency of the horse to race trucks that would pass it on the highway. This supposedly known tendency of the horse was the sole basis for plaintiffs' claims of negligence, and the trial was conducted entirely on this theory. A special verdict question concerning this alleged tendency was submitted to the jury and, while the testimony was in conflict on this point, the jury specifically found that there was no tendency of this horse to race trucks. Thus the key contention upon which the plaintiffs were relying to establish a case was not proven.

Even if the pleadings are construed to allege as an act of negligence the mere riding double, bareback on the highway by the two girls, there was no proof offered or introduced that riding bareback, double, on the highway constituted such a danger that Niles De Lano was negligent in allowing it to occur at all. In spite of the absence of both pleading and proof on this point, plaintiffs requested a special verdict question concerning this form of negligence, which the trial court properly refused. The statute describing special verdict procedures, sec. 270.27, Stats., provides that questions shall be submitted "relating only to material issues of fact."

"A. Failed to warn the said Mary Jean Allen or her parents, Eugene C. Allen and Joan E. Allen, of said peculiarity of the horse 'Flicka';

"B. Allowed Mary Jean Allen to ride double and bareback on the horse 'Flicka' on County Trunk Highway XX, knowing that if the horse 'Flicka' encountered a truck on the said highway, that it would race the truck and in doing so would gallop and buck, endangering the rider or riders on said horse, especially the rider without the security of a saddle;

"C. Allowed Mary Jean Allen to ride with the said Debra L. DeLano, knowing that the said Debra L. DeLano was unable to control the horse 'Flicka' if the said horse 'Flicka' raced a truck;

"D. Allowed the said Mary Jean Allen to ride double on said horse 'Flicka' when the said Debra L. DeLano was an inexperienced horsewoman and was not capable of controlling the horse 'Flicka' if the horse 'Flicka' raced a truck on the highway."

In the present case, pleadings and proof failed to raise a "material issue of fact." This court has long recognized that:

"In drafting a special verdict the trial court must first consider the issues raised by the pleadings. He should then eliminate from the issues so raised those that are determined by the evidence on the trial by admissions, by uncontradicted proof, or by failure of proof." *Bell v. Duesing* (1957), 275 Wis. 47, 53, 80 N. W. 2d 821.

In order to find that the trial court erred in not giving the requested special verdict question concerning Mr. De Lano's negligence, we would have to find that, as a matter of law, riding this horse on this particular highway under these conditions was in itself a negligent act. As the trial court stated in refusing to give this special verdict question, "It presupposes facts that were not proven in the least." There was no evidence introduced that riding a horse double, riding a horse bareback, or riding a horse down this particular highway were of such hazardous nature as to be acts of negligence on the part of either Debra De Lano, or her father, who may have been able to prevent these acts. Indeed, the testimony at the trial, although not directed at this point, tended to show that it was a regular practice to ride horses, including the horse in question, on the local roads around the De Lano residence, that it was not at all unusual to ride double, and that the De Lano's horse had a reputation for docility. We could not hold as a matter of law that the riding of a horse under these circumstances constituted such a danger that permitting it to occur would itself constitute an act of negligence.

The plaintiffs also assign error in the court's refusal to give a requested instruction that the duty owed to the deceased by the defendants was that of "licensor" toward a "licensee," the theory being that Mary Jean Allen was, in effect, a "licensee" while riding Debra

De Lano's horse. This instruction could only have been relevant if the horse in question had, in fact, a tendency to chase trucks, because such a tendency could theoretically be a "hidden defect" about which the licensor had a duty to warn the licensee. Since the jury found that the horse had no tendency to race trucks, the court's failure to give the requested licensor-licensee instruction could not have been prejudicial even if it were error, a question we need not consider.

The plaintiffs also allege that a number of statements in the instructions of the court were "abstract" and, while not alleging that they misstated the law, it is claimed that they had a tendency to mislead the jury as to the conduct which could constitute negligence of the defendants. Prior to the rendering of the verdict, ample opportunity had been given to the plaintiffs to object to these allegedly "abstract" instructions, but no objection was made. Under these circumstances, the plaintiffs have waived any right to review in this court of alleged error growing out of the giving of such instructions. *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 154 N. W. 2d 237.

In any case, the question of negligence of the defendants was never reached by the jury because, as pointed out above, the theory of the case advanced by the plaintiffs was that the horse in question had a tendency to race trucks. This the jury found not to be a fact, thereby precluding any determination of negligence on the part of the defendants and thereby rendering any "abstract" portions of instructions harmless, even if they were erroneous.

*By the Court.*—Judgment affirmed.