SAGE, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76–631–CR. Submitted on briefs January 31, 1979.—*
*Decided February 27, 1979.*
(Also reported in 275 N.W.2d 705.)

784

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Ruth S. Downs,* deputy state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

WILLIAM G. CALLOW, J.   The defendant was convicted, following a jury trial, of first-degree murder. On review he challenges the receipt in evidence of six photographs of the victim taken after the recovery of the body. We conclude that the trial court did not abuse its discretion in receiving the photographs.

Paul Sage was convicted of the first-degree murder of William Bartel. Sage, age sixteen, lived in West Allis, but had run away from home and was staying at his grandfather's cabin in the Town of Ainsworth in Langlade County. Sage testified that on September 1, 1975, he spent the afternoon drinking ten or twelve beers and playing pool at a tavern in Pickerel in Langlade County. The defendant testified that he began to talk at the bar with Bartel, age eighty. Bartel was bragging about his car and money. While talking, they each drank three or four beers and shots of liquor. Bartel offered to give the defendant a ride back to the cabin. When they arrived, the defendant invited him in and opened a can

of beer for each of them. As Bartel was seated near the kitchen table, the defendant took a shovel from the hall behind Bartel and hit him with the shovel in the back of the head. Bartel fell forward but got up and reached at the defendant, swearing at him. The defendant hit him again, knocking him down, and Bartel started to get up. At trial the defendant testified that he could not recall exactly what happened next. In a statement made to the police and read into evidence, the defendant said he hit Bartel "maybe 20 or 30 times." He remembered tying Bartel up, taking his wallet, and placing his body in a dry well[1] adjoining the house. He testified that he did not mean to kill Bartel but intended only to knock him out and steal his money and car.

A deputy sheriff found Bartel's body September 3. Sage was apprehended in Oklahoma and returned to Wisconsin September 8.

Dr. Robert Huntington, a pathologist, performed an autopsy on Bartel September 4. He testified that in his opinion death was caused by blunt blows to the head. While Dr. Huntington listed nineteen "subheadings" of external injuries, he declined to number the injuries because "some of [the injuries] were sort of confluent, and the different injury forms in some of these could have been produced by one blow having different effects on different tissue areas. . . ." Dr. Huntington testified that the "body was banged from so many different sides" that a fall would not have produced the injuries.

Prior to trial, the defendant moved for an *in camera* inspection of any photographs and moved to exclude photographs of Bartel on the ground that they were unnecessary and prejudicial. The court decided to receive in evidence over the defendant's objection six of the photos, four black and white, two color, of the victim's

---

[1] The well was 12 to 15 feet deep and housed a pump at the bottom.

body at the time it was discovered and at the autopsy. Exhibit 6 was a black and white photo showing the victim's body in the dry well covered, except for the feet, by rugs and towels. Exhibit 7, a black and white, shows the victim's corpse, with hands and feet tied, as it appeared when it was pulled from the well. Exhibits 21 and 23 are color photographs of the victim's head taken at the autopsy showing bruises, abrasions, and discoloration. Exhibits 22 and 24, black and white pictures taken at the autopsy, show the victim's face and the side of his head.

The prosecutor originally offered Exhibits 22 and 24 in color prints arguing that color photos were necessary to show "the severity of the wounds" which would have a bearing on the defendant's intent, but the colored prints were rejected by the court. After comparing the black and white copies with the color prints, the court found that the discoloration and a bruise appearing in the color copy of Exhibit 21 were not visible in the black and white; accordingly, that photograph was admitted in color. Defense counsel pointed out that because the body was pushed into the well upside down, blood rushed to the head, making the images of the face seem worse than the face actually appeared at the time of the killing. The court weighed that fact but found that color photos were necessary because the black and whites did not adequately show the bruising. The court explained:

"There are certain areas where the bruising is much more clear in the black and white photographs—I mean, much more clear in the colored photographs—and there are other areas in the black and white where the bruises can be seen but in balance, I think the bruising is not adequately disclosed by the black and white photographs. However, Mr. McCormack, in terms of fairness, I think that your point can be made with one of the front view and the other two photographs, if you wish to introduce them, can be introduced with black and white photographs. I will allow you to select those photographs that

you wish to introduce in color. I have already admitted Exhibit 21, and I will allow you to pick from the three remaining views, one of the photographs."

Defense counsel objected during trial to the receipt of Exhibits 21–24. No specific objection was interposed at the time Exhibits 6 and 7 were identified. Counsel made no objection to the court's sending the photos to the jury room.

The defendant brought a postconviction motion for a new trial on the ground that it was prejudicial error to receive Exhibits 6, 7, 21, 22, 23, and 24 in evidence. The court denied the motion. The defendant seeks review by writs of error of the judgment of conviction and order denying the motion for a new trial.

The issue is whether it was prejudicial error in this first-degree murder prosecution to receive in evidence photographs of the victim's body and face taken at the time of the recovery of the body and at the autopsy.

The defendant admitted at trial that he killed Bartel. The jury issue was whether he intended to take Bartel's life, which would render his act first-degree murder under sec. 940.01, Stats. Exhibits 21–24, showing the victim's head and face at the autopsy, were admitted to demonstrate the number and severity of the wounds from which the jury might infer an intent to kill. It is these photographs which form the focus of the defendant's argument on appeal. No reason was offered for the admission of Exhibits 6 and 7, showing the body in the well and after it was pulled out. Treatment of the body immediately following the beating, especially its concealment, could be relevant on the issue of the defendant's intent.

The Rules of Evidence provide in part:

"904.02 **Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is

admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

"904.03 **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The legal principles governing admission of photographs in evidence were well established in this state's common law before the adoption of the Rules of Evidence. This court has viewed the application of these principles as essentially unchanged following the adoption of the Rules. The admission of photographs in evidence is a matter within the trial court's discretion. *Simpson v. State*, 83 Wis.2d 494, 505, 266 N.W.2d 270 (1978). Photographs should be admitted if they will help the jury gain a better understanding of material facts; they should be excluded if they are not "substantially necessary" to show material facts and will tend to create sympathy or indignation or direct the jury's attention to improper considerations. *Neuenfeldt v. State*, 29 Wis.2d 20, 32–33, 138 N.W.2d 252 (1965). In *Hayzes v. State*, 64 Wis.2d 189, 200, 218 N.W.2d 717 (1974), the court described the standard of appellate review of a trial court's discretion to admit photographs as follows:

"While reasonable persons looking at the photographs as a part of a record may have differing opinions in regard to whether they were cumulative, inflammatory, or prejudicial, the judgment is essentially one to be exercised by the trial judge. He, better than anyone else, in light of the evidence, can make the determination that the photographs will assist the jury in a rational and dispassionate determination of the facts. Where a trial

judge has applied the appropriate discretionary standards, this court will not reverse his decision unless it appears that, in light of the record as a whole, his conclusion was wholly unreasonable or if the circumstances indicate that the only purpose of the photographs was to inflame or prejudice the jury."

The defendant argues on appeal that it is impossible to discern from the photos how many blows were struck. Thus, he argues, they add nothing to the determination of intent. Dr. Huntington testified that different injury forms could have been produced by one blow having different effects on different tissue areas and that some, but not all, of the injuries might conceivably have been caused by a fall. The defendant also points to the fact that the body was damaged between the time of the killing and the time the photos were taken by its placement in the well and retrieval two days later.

The photographs certainly cannot be viewed as conclusive evidence of the exact number of blows struck, but they demonstrate a mutiplicity of injuries, and the jury could infer that Sage struck the victim repeatedly. Dr. Huntington referred to Exhibits 21–24 while testifying.

In *State v. Wallace,* 59 Wis.2d 66, 85–86, 207 N.W.2d 855 (1973), a first-degree murder case, the defendant argued on appeal that it was prejudicial error for the trial court to pass two color photographs of the victim among the jury. This court affirmed the trial court's exercise of discretion saying:

"During the course of his testimony, the pathologist, Dr. Van · Hecke, testified about the various deep cuts and numerous abrasions on the victim's head and chest, and in so doing, he held the photographs. The only material fact which the pictures related to was the number of times the victim had been struck. Dr. Van Hecke testified that although one blow of a concrete brick of this type present at trial and contended to be the murder weapon, could have caused the death, one blow could not

have accounted for the numerous other cuts and abrasions. Since the jury was faced with a substantial question as to whether the defendant's conduct as described by him in his confession amounted to first- or second-degree murder, the jury should be allowed to see the photographs to determine how many times the victim actually was struck. Under this theory, the trial court did not abuse its discretion." *Id.* at 86.

*Wallace* cannot be read, as the defendant urges, to limit the admissibility of photographs to those from which the jury can determine the exact number of blows struck. The photographs in *Wallace*, like those here, are relevant because they show a multiplicity of injuries to the victim.

The trial court appropriately exercised its discretion in allowing the photographs. The court recognized that some of the facial discoloration may have resulted from the body's being stuffed upside down into the well, but it determined that color photographs were essential to show the bruises. Under the standard of review in *Hayzes, supra,* 64 Wis.2d at 200, it cannot be said that the trial court abused its discretion.

Counsel attempted unsuccessfully to elicit from Dr. Huntington an admission that the condition of the body could be caused by a fall or other trauma. The jury was thus entitled to give the photographs whatever weight it saw fit in view of the testimony. Counsel chose not to argue the possibility of changed conditions to the jury and did not ask for an instruction.

The record does not disclose an abuse of discretion in admitting the photographs. Reversible error cannot be predicated on the court's sending the photographs to the jury room because there was no objection made at trial. *See: Jones (George Michael) v. State,* 70 Wis.2d 41, 55, 233 N.W.2d 430 (1975).

*By the Court.*—Judgment and order affirmed.