Hope J. ELLSWORTH, and Adam John Ellsworth, David Michael Gibson, Jr., and Lewis Jadwin Asfeld, minors, by their Guardian ad Litem, Timothy J. O'Brien, Plaintiffs-Respondents-Cross-Appellants,††

DUNN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff-Respondent,

v.

Mark A. SCHELBROCK, Defendant-Appellant,†

MSI INSURANCE COMPANY, Defendant-Third-Party Plaintiff-Co-Appellant,†

GENERAL MOTORS CORPORATION, Defendant-Third-Party Defendant-Respondent-Cross-Respondent,

ABC INSURANCE COMPANY, Third-Party Defendant.

Court of Appeals

*No. 98–0294. Submitted on briefs June 8, 1999.—Decided July 27, 1999.*

(Also reported in 600 N.W.2d 247.)

††Petition to review granted.
†Petition to review granted.

542

543

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James A. Pelish* and *Joe Thrasher* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake.

On behalf of the defendant-third-party plaintiff-co-appellant, the cause was submitted on the brief of *Emile H. Banks, Jr.*, and *John K. Garofani* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James A. Drill* and *Brian H. Sande* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the defendant-third-party defendant-respondent-cross-respondent the cause was submitted

on the brief of *Marlene A. Yoder, David R. Kelly* and *Steven L. Reitenour* of *Bowman and Brooke LLP* of Minneapolis, Minnesota.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J. Mark Schelbrock and MSI Insurance appeal a judgment awarding damages and costs to plaintiffs and further dismissing MSI's third-party complaint and awarding costs to General Motors Corporation and its insurer.[1] Schelbrock first contends that the trial court erred by inserting into the special verdict an amount for past medical expenses based upon Ellsworth's expert witness's uncontested testimony of the reasonable and customary value of the services rendered instead of the amount Dunn County paid as Medical Assistance benefits for those services, which was considerably less than the amount the court inserted. Schelbrock argues Ellsworth is limited to recovering as past medical expenses only the amounts Medical Assistance paid, rather than the reasonable value of the services rendered. Because we conclude that the payment of Medical Assistance benefits falls within the collateral source rule, the value of the ser-

---

[1] Ellsworth cross-appeals contending that: (1) the trial court properly inserted into the special verdict the reasonable and customary value of medical services rendered instead of Dunn County's Medical Assistance payment; (2) the trial court properly admitted photographs of Ellsworth's injuries into evidence; (3) the record supports the childrens' award for loss of their mother's society and companionship; (4) the trial court properly denied the motion for mistrial after a juror fainted; and (5) the trial court properly denied the motion after verdict seeking a new trial in the interests of justice. The analysis in the body of our decision disposes of these contentions.

vices rather than the amount actually paid determines the defendants' liability for past medical expenses.

Schelbrock further contends that the trial court erroneously exercised its discretion by allowing the jury to view photographs of Ellsworth's severe burn injuries and, further, that the trial court erred in denying a mistrial after one of the jurors fainted upon viewing those photographs. We conclude that the trial court did not erroneously exercise its discretion in admitting the photographs. We further conclude that the court was not required to declare a mistrial as the result of one of the jurors fainting after viewing the photographs because the remaining jury panel was properly cautioned and examined in regard to their willingness to continue and whether the juror's fainting would affect their deliberations.

Schelbrock also contends that the record fails to support the jury award regarding the Ellsworth childrens' loss of their mother's society and companionship. Because we conclude that the record adequately demonstrates their loss, we reject Schelbrock's contention.

MSI contends that the court erred by failing to instruct the jury on enhanced injury. Because the jury determined General Motors was not negligent, we conclude this allegation of error is moot. MSI further contends that the trial court erred by admitting into evidence General Motors' crash test videotapes made using a dissimilar automobile and demonstrating the consequences of locating a gas tank as Ellsworth's experts recommended. Because the crash test videotapes demonstrated General Motors' basis for locating the gas tank as it did and rebutted Ellsworth's expert's testimony as to where the gas tank should be located,

the trial court properly exercised its discretion by admitting the videotapes into evidence.

MSI further contends that the trial court erred by not declaring a mistrial because General Motors' attorney improperly informed the jury of the result of its verdict at closing argument. Because counsel's advisement that General Motors would win the case based upon certain jury findings was not improper, we conclude that the court did not err in refusing to grant a mistrial. Finally, MSI contends that the verdict was contrary to law and the evidence at trial, requiring a new trial in the interest of justice. Because we conclude that the verdict is properly and adequately supported by the evidence in the record, the trial court did not err by denying MSI's motion for a new trial in the interest of justice. We therefore affirm the judgment.

## BACKGROUND

Hope Ellsworth was driving her 1975 Oldsmobile Cutlass Supreme home during the early morning hours after finishing her shift as a cab driver, when her vehicle was struck from behind by an automobile Mark Schelbrock was driving. Schelbrock was intoxicated at the time of the accident. Following the rear-end impact, Ellsworth's vehicle ignited into flames. Because she was unable to extricate herself immediately from the vehicle, Ellsworth suffered third-degree burns over approximately fifty-six percent of her body, as well as other substantial and permanent injuries. Ellsworth filed suit against Schelbrock and his insurance company, MSI. Dunn County Department of Human Services intervened as a subrogated party plaintiff, alleging payment of Ellsworth's medical expenses in the amount of $328,931.90, through Medical Assistance which Dunn County administered, as well as

AFDC and Food Stamp benefits. At trial, the reasonable and customary value of Ellsworth's medical services, however, was determined to be $597,448.27.

MSI filed a third-party complaint against General Motors and its insurer alleging that Ellsworth's vehicle was negligently designed and/or was defective and unreasonably unsafe for its user. MSI contended that the fire was caused by General Motors' negligence in improperly locating the gas tank under the car's trunk, where it was susceptible to ignition in a rear-end crash, instead of over the rear axle. Ellsworth and Schelbrock subsequently amended their complaints to allege similar causes of action against General Motors.

The jury returned a verdict finding that the vehicle was not so defective as to be unreasonably dangerous and that General Motors was not negligent with respect to the design and/or manufacture of the 1975 Cutlass. The trial court had previously answered questions on the special verdict finding that Schelbrock was negligent in operating his automobile and that his negligence caused Ellsworth's injuries. The trial court also determined that Ellsworth's past medical expenses amounted to $597,448.27. The jury awarded Ellsworth $20,806 for past loss of earnings, $451,330 for loss of future earning capacity, $3,000,000 for past pain, suffering and disability, and $1,730,000 for future pain, suffering and disability. In addition, each of Ellsworth's minor children were awarded $50,000 for loss of their mother's society and companionship. The jury found Schelbrock's conduct outrageous and assessed punitive damages in the amount of $10,000. Ellsworth, Schelbrock and MSI filed motions after verdict. The trial court denied the motions and ordered judgment on the verdict. This appeal followed. Additional facts will be set forth within the specific arguments.

## ANALYSIS

Schelbrock first contends that Ellsworth's recovery of past medical expenses is limited to $354,941.21, the amount Medical Assistance paid, rather than the reasonable and customary value of services rendered, which Ellsworth's expert, Dr. Arenholz's, uncontested testimony established was $597,448.27. MSI contends that the trial court erred when it answered as a matter of law that the past medical expenses were $597,448.27, rather than the amount Medical Assistance paid. We do not agree.

We must consider the application of the collateral source rule to Medical Assistance payments.[2] The collateral source rule provides that a plaintiff is entitled to recover the reasonable and customary charges for past medical expenses without regard to the payment of those expenses or the amount of such payment by a third party. *Payne v. Bilco Co.*, 54 Wis. 2d 424, 433, 195 N.W.2d 641, 647 (1972). The Wisconsin Supreme Court has held that "there is no apparent difference between private health insurance and Medicare other than that Medicare is administered by the federal government." *Merz v. Old Republic Ins. Co.*, 53 Wis. 2d 47, 54, 191 N.W.2d 876, 879 (1971). The *Merz* court held that an injured party's compensation should not be reduced by the receipt of government-provided medical services. *Id.* The collateral source rule has been expanded to include situations where gratuitous medical services are provided or paid for by the state. *Rixmann v. Som-*

---

[2] We do not address the situation where a medical bill is discounted in return for other considerations such as a contract for exclusive treatment as occurs with a health maintenance organization.

*erset Pub. Schs.*, 83 Wis. 2d 571, 580, 266 N.W.2d 326, 331 (1978) (citing *Thoreson v. Milwaukee & Suburban Transport Corp.*, 56 Wis. 2d 231, 243, 201 N.W.2d 745, 751 (1972)). Because Medical Assistance is a form of insurance paid for by a general societal tax and is considered the equivalent of health insurance for the needy, *Cates v. Wilson*, 361 S.E.2d 734, 737–38 (N.C. 1987), we conclude that, as with other forms of insurance, the collateral source rule is properly applied to Medical Assistance payments.

Application of the collateral source rule to Medical Assistance payments is also justified because Dunn County's subrogation rights prevent Ellsworth from receiving a double recovery. Wisconsin law entitles the state to full reimbursement for any Medical Assistance benefits made on Ellsworth's behalf upon Ellsworth's recovery of a damages award. Section 49.89, STATS. Because Medical Assistance provides Dunn County a right of subrogation to recover the sums it paid for Ellsworth's medical expenses, we are satisfied that application of the collateral source rule will not provide Ellsworth with a windfall profit.

Furthermore, we are satisfied that Schelbrock will not be paying out twice to two parties. The trial court judgment indicated that Dunn County may have an interest in the amount Ellsworth receives from the judgment, subject to further order from the court. Therefore, while Schelbrock will appropriately be obligated to pay the full damage, he will not be subject to answer twice in damages. He will, however, be responsible for the full amount of the value of the services rendered. *See Jindra v. Diederich Flooring*, 181 Wis. 2d 579, 595, 511 N.W.2d 855, 860 (1994).

■

We conclude, therefore, that the existence of a subrogated claim for Medical Assistance payments does not affect the application of the collateral source rule to Ellsworth's claim for the customary and reasonable value of medical services rendered. The rule is created to prevent the tortfeasor from benefiting from third-party payments made for the medical services rendered to an injured plaintiff. *Thoreson*, 56 Wis. 2d at 243, 201 N.W.2d at 752. The public policy underlying this rule is that between the injured plaintiff and the tortfeasor, the plaintiff should benefit from third-party payments, not the tortfeasor. *Id.*

■

We see no reason that the rule does not apply in its full force under the facts of this case. Ellsworth is entitled to the reasonable value of the medical services rendered. The uncontradicted testimony is that the reasonable and customary charges for the medical services rendered was $597,448.27. The Medical Assistance payment is a collateral source even though it is a subrogated claim. We perceive no difference between the doctor who reduces his bill because of Medical Assistance coverage and the doctor who voluntarily discounts his bill because his patient is indigent. While it is true that Dunn County may have a subrogation claim for the amount of medical assistance it paid, Ellsworth is entitled to recover the reasonable value of the services rendered rather than the amount of Medical Assistance paid, because Schelbrock should not benefit from the availability of Medical Assistance to Ellsworth. Because the Medical Assistance payment is a subrogated claim, Dunn County has a right to recover the sums paid on Ellsworth's behalf.

We find additional support for our analysis in cases decided in other jurisdictions holding that the collateral source rule applies to benefits which are provided gratuitously by the government. In *Cates,* the court held that evidence that gratuitous public benefits served, and will serve, to mitigate medical malpractice plaintiff's damages violates the collateral source rule because it may affect the jury's consideration of liability issues; *see also Johnson v. Baker,* 719 P.2d 752 (1986). The court in *Cates v. Wilson,* 350 S.E.2d 898, 902 (Ct. App. N.C. 1986), *aff'd as modified by Cates,* 361 S.E.2d at 734, held that North Carolina's Medicaid subrogation statute did not remove Medicaid benefits from the collateral source rule's protection because to hold otherwise would serve to transfer responsibility for malfeasance from the tortfeasor to the victim and the State. Thus, the availability of public assistance should not operate to reduce a tortfeasor's legal liability. In *Werner v. Lane,* 393 A.2d 1329, 1335 (Maine 1978), the court stated:

> The overwhelming weight of authority in the country is to the effect that the fact necessary medical and nursing services are rendered gratuitously to one who is injured as a result of the negligence of another should not preclude the injured party from recovering the reasonable value of those services as part of his compensatory damages in an action against the tortfeasor. This is known as the collateral source rule. Stated otherwise, it means that, if a plaintiff is compensated in whole or in part for his damages by some source independent of the tortfeasor, he is still permitted to have full recovery against him.

Schelbrock contends that because there was a subrogation claim on Dunn County's behalf, Dunn County

owned all the rights to the claim for past medical expenses and its claim is thus limited to the amount it actually paid. In support of his contention, Schelbrock relies on *Lambert v. Wrensch*, 135 Wis. 2d 105, 399 N.W.2d 369 (1987); *Cunningham v. Metropolitan Life Ins.*, 121 Wis. 2d 437, 360 N.W.2d 33 (1985); and *Heifetz v. Johnson*, 61 Wis. 2d 111, 211 N.W.2d 834 (1973). While these cases do address the existence of subrogation claims, we believe the law has clearly established that the collateral source rule applies even when payment is made by a third party who possesses a subrogated claim. In *Thoreson*, 56 Wis. 2d at 243, 201 N.W.2d at 752, the Wisconsin Supreme Court declared:

> The general rule in Wisconsin has been that a plaintiff who has been injured by the tortious conduct of another is entitled to recover the reasonable value of his medical costs reasonably required by the injury. In most cases this is the actual expense, but in some cases it is not. But the test is the reasonable value, not the actual charge, and therefore there need be no actual charge. Under this theory of recovery, the fact that necessary medical and nursing services are rendered gratuitously to one who is injured should not preclude the injured party from recovering the value of those services as part of his compensatory damages. The reason for this view is often given that the recovery has a penal effect on a tortfeasor and the tortfeasor should not get the advantage of gratuities from third parties.

The court subsequently held that "the collateral source rule is not limited to paid-for benefits but applies to gratuitous medical services provided or paid for by the state." *Id.* at 245, 201 N.W.2d at 752. While *Thoreson* does not discuss subrogation in relation to the collateral source rule, we conclude that the rules underlying

557

the holding apply notwithstanding the existence of a subrogated claim. The subrogated claim, however, must be paid to the subrogee so as to eliminate double recovery.

Schelbrock's reliance on *Lambert* and *Heifetz* is unpersuasive. Both *Heifetz* and *Lambert* are cases involving the narrow situation where a subrogation claim was lost by the statute of limitations and the tortfeasor was no longer answerable because the subrogee's claim was extinguished, but the court nevertheless concluded that the public policy underlying statutes of limitations inured to the benefit of the tortfeasor. Accordingly, in those cases, the court concluded that the plaintiff should not be allowed to recover the full amount of the medical expenses incurred when such amount was not subject to a subrogation claim because that claim expired as a result of the statute of limitations. *Heifetz*, 61 Wis. 2d at 124–25, 211 N.W.2d at 841; *Lambert*, 135 Wis. 2d at 119, 399 N.W.2d at 375. Because of the factual dissimilarity of these cases to the case at bar, we conclude their holdings are inapposite.

Schelbrock next contends that the trial court erred by allowing the jury to view photographs of the burns Ellsworth sustained as a result of the car's incineration following impact. Schelbrock contends that the photographs were so shocking, graphic and inflammatory that their viewing ignited the jury's passions, making it unable to render a considered judgment on the amount of money necessary to compensate Ellsworth for her injuries. The admission of photographs into evidence is a matter within the trial court's discretion. *Sage v. State*, 87 Wis. 2d 783, 788, 275 N.W.2d 705, 708 (1979). The trial court's decision will be upheld unless

it is wholly unreasonable or if the only purpose of the photographs is to inflame and prejudice the jury. *State v. Thompson*, 142 Wis. 2d 821, 841, 419 N.W.2d 564, 571 (Ct. App. 1987). Discretionary acts are upheld so long as the trial court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a conclusion that a reasonable judge could reach. *Ritt v. Dental Care Assocs., S.C.*, 199 Wis. 2d 48, 52, 543 N.W.2d 852, 861 (Ct. App. 1995).

Photographs should be admitted if they help the jury gain a better understanding of material facts and should be excluded if they are not "substantially necessary" to show material facts and will tend to create sympathy or indignation or direct the jury's attention to improper considerations. *Sage*, 87 Wis. 2d at 788, 275 N.W.2d at 708. Here, the photographs were admittedly graphic in nature. Nonetheless, they accurately reflected the injuries Ellsworth sustained and aided the jury in understanding the medical conditions and treatment Ellsworth required and would require in the future. Therefore, the photographs provided an understanding of material facts in this case. The record demonstrates that the trial court weighed the potential inflammatory prejudice against Ellsworth's right to demonstrate the nature of her injuries and found that because the photographs accurately reflected her injuries, the jury could properly view them. We conclude that the trial court reasonably exercised its discretion in allowing the jury to view the photographs of Ellsworth's injuries.

Schelbrock next contends that the trial court erred in denying his motion after verdict seeking a new trial on the issue of damages for the childrens' loss of their mother's society and companionship. Schelbrock con-

tends that there was no evidence introduced demonstrating the quality of the relationship between Ellsworth and her children. Schelbrock's contention is without merit.

The trial court's decision whether to grant a new trial is discretionary and will only be reversed where a clear erroneous exercise of discretion is shown. *Krolikowski v. Chicago & Northwestern Transp. Co.*, 89 Wis. 2d 573, 580–81, 278 N.W.2d 865, 868 (1979). Under § 805.14(1), STATS.:

> No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.

Thus, "if there is any credible evidence which, under any reasonable view, fairly admits an inference that supports a jury's finding, that finding may not be overturned." *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 782, 541 N.W.2d 203, 207 (Ct. App. 1995).

The evidence here demonstrates that at the time of Ellsworth's accident, two of the three children were living with their mother as a family unit. Because of the disability attending to her injuries and because of the psychological impact the injuries had on Ellsworth, she was no longer able to provide for the children. They had to be placed with other family members for a substantial and indefinite period of time. Here, the evidence demonstrates that a family relationship was

destroyed by virtue of Ellsworth's injuries. This destruction of the family unit is sufficient to support the award for loss of society and companionship. Ellsworth need prove nothing more to support the award for the loss of society and companionship on behalf of her children.

MSI contends that the trial court erred by failing to instruct the jury on enhanced injuries. A trial court has wide discretion as to the instructions it will give to a jury in any particular case. *Anderson v. Alfa-Laval Agri, Inc.*, 209 Wis. 2d 337, 344, 564 N.W.2d 788, 792 (Ct. App. 1997). Instructions must fully and fairly inform the jury as to the applicable principles of law. *Id.* As long as the instructions adequately advise the jury as to the law it is to apply, the court has the discretion to decline to give other instructions even though they may properly state the law to be applied. *Id.* If the trial court erroneously refused to give a proper instruction, a new trial will not be ordered unless the trial court's error was prejudicial. *Id.* at 345, 564 N.W.2d at 792. An error is prejudicial only if it appears that the result would have been different had the error not occurred. *Id.*

Because the jury determined that Ellsworth's car was not unreasonably dangerous and that General Motors had no liability, this claim of error has been rendered moot. The jury determined that the vehicle was not unreasonably dangerous and that General Motors was not liable for Ellsworth's injuries, and therefore would not have reached the enhancement instruction had it been given. We cannot conceive from MSI's nebulous argument nor does the record disclose how the jury's deliberations would have in any way changed even if the enhancement instruction had been

given. *See Allen v. State Farm & Cas. Co.*, 71 Wis. 2d 212, 216–17, 238 N.W.2d 104, 106–07 (1976) (Because jury never reached the negligence question, the trial court's failure to give an instruction that was dependent on a negligence finding could not have been prejudicial even if it were error, a question we need not consider.). Even if it was error to refuse to give the enhancement instruction, and we do not so hold, because there is no prejudice, MSI's allegation of error must fail.

MSI next alleges that the trial court erred when it failed to direct a mistrial after General Motors' counsel improperly informed the jury as to the result of their verdict at closing argument. The decision to grant a motion for a mistrial lies within the trial court's sound discretion. *Haskins v. State,* 97 Wis. 2d 408, 419, 294 N.W.2d 25, 33 (1980). The trial court must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial. *State v. Grady,* 93 Wis. 2d 1, 13, 286 N.W.2d 607, 612 (Ct. App. 1979).

The fundamental rule in Wisconsin is that it is reversible error for counsel to inform the jury of the effect of its answer on the ultimate result of its verdict, especially if it appears that the error complained of has affected the substantial rights of the party seeking to revise or set aside the judgment or secure a new trial. *Kobelinski v. Milwaukee Suburban Transport Corp.*, 56 Wis. 2d 504, 520, 202 N.W.2d 415, 425 (1972). This is true whether the jury is explicitly informed or informed by implication. *Id.* An argument is not improper, however, merely because an intelligent juror might be able

to infer therefrom the effect upon the final result of his answers to the special verdict. *Id.*

We see no merit to MSI's contention. Counsel's argument to the jury spoke in terms of General Motors "winning" upon certain jury findings. Such a statement does not advise the jury of the effect of its verdict and states no more than is apparent to the entire jury panel based on the parties' contentions during the trial. Nor did counsel's remarks constitute prejudicial error or influence the jury's verdict. The jurors were properly and fully instructed as to their role as fact-finder and all of the relevant bases they must employ to fulfill that role. We conclude, therefore, that counsel's statements to the jury made during closing argument did not improperly advise the jury as to the results of its verdict, and therefore a mistrial was not required.

MSI next contends that the trial court erred when it admitted into evidence videotapes of crash test results of a dissimilar vehicle. MSI alleges that there is no relevance to these crash test results because the circumstance of the crash test and vehicles involved were dramatically different than those involved in Ellsworth's accident. Here, Ellsworth's expert opined that the gas tank on Ellsworth's car was improperly located and should have been placed above the rear axle instead of under the trunk. To rebut that testimony, General Motors introduced a videotape of a crash test General Motors conducted with a car that had the gas tank located as Ellsworth's expert recommended. The results of the test demonstrated that a car with a gas tank so located was susceptible to fire caused by a leaking tank damaged from a rear end collision.

■■■■

Whether demonstrative evidence is to be received rests largely with the trial court's discretion. *Hernke v. Northern Ins. Co.*, 20 Wis. 2d 352, 359, 122 N.W.2d 395, 399 (1963). As long as the record reveals a reasonable basis for the trial court's decision, we must defer to the trial court's decision regarding evidence. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). The party offering an item of demonstrative evidence must establish its probative value and relevancy. *Meurer v. ITT Gen. Controls*, 90 Wis. 2d 438, 454–55, 280 N.W.2d 156, 164 (1979).

■■■■

In Wisconsin, "pretrial experiments may be admitted into evidence if their probative value is not substantially outweighed by prejudice, confusion, and waste of time." *Maskrey v. Volkswagenwerk Aktiengesellschaft*, 125 Wis. 2d 145, 165, 370 N.W.2d 815, 825 (Ct. App. 1985). The court should let the evidence in if enough of the obviously important factors in the case are duplicated in the experiment, if the failure to control other possibly relevant variables is explained, and if the jury is aided by the evidence's admission. *Id.* While there were vast dissimilarities between the vehicle in this case and the vehicle reflected in the video, the trial court could properly conclude that the video adequately demonstrated the problems with Ellsworth's expert's opinion that the gas tank should be located over the rear axle. Location of the gas tank was a material issue in the case against General Motors. In addition, to minimize any prejudicial effect, the court permitted only one showing of an edited version of the tape to be viewed. The court also permitted extensive cross-examination about the videotape crash test directed at the dissimilarities between the vehicle

depicted in the video and Ellsworth's vehicle. We conclude that the trial court did not erroneously exercise its discretion in admitting the videotape.

██

MSI next contends that the trial court erroneously exercised its discretion when it denied MSI's and General Motors' motion for a mistrial after one of the jurors fainted upon viewing the photographs of Ellsworth's injuries. As we have stated, the decision whether to grant a mistrial lies within the trial court's sound discretion. *State v. Bunch*, 191 Wis. 2d 501, 506, 529 N.W.2d 923, 925 (Ct. App. 1995). The trial court must determine, in light of the entire proceeding, whether the basis for a mistrial is sufficiently prejudicial to warrant a new trial. *Id.* The trial court properly exercises its discretion if it examines the relevant facts, applies the proper standard of law, and engages in a rational decision-making process. *Id.* at 506–07, 529 N.W.2d at 925. "We accord great deference to a trial court's decision on a motion for mistrial." *Broadhead v. State Farm Mut. Auto. Ins. Co.*, 217 Wis. 2d 231, 579 N.W.2d 761, 763–64 (Ct. App. 1998).

██

After one of the jurors fainted, the trial court examined the balance of the panel to determine whether the incident involving the juror was likely to improperly influence the remaining jurors in their deliberations and whether they were willing to continue. The remaining jurors indicated to the court that the incident had not affected them in any way and that they would prefer to proceed. After making this inquiry, the trial court determined that the jury was willing and able to continue hearing the evidence in the case and that the jurors' deliberations would not be unduly influenced by a member of the panel fainting.

We conclude on this basis that the trial court properly exercised its discretion in refusing to order a mistrial.

Finally, MSI contends that the trial court erred when it denied the motion after verdict requesting a new trial because the verdict was contrary to law and the evidence and a new trial was warranted in the interest of justice. We dispose of this claim summarily. MSI grounds this claim on "the reasons set forth in the prior sections" of its brief and "based upon all of the objections previously set forth by MSI." We have already disposed of MSI's claims and affirmed the trial court's determinations on those issues. Furthermore, we consider "for-reasons-stated-elsewhere" arguments to be inadequate and decline to consider them. *Calaway v. Brown County*, 202 Wis. 2d 736, 750–51, 553 N.W.2d 809, 815 (Ct. App. 1996).

*By the Court.*—Judgment affirmed.