HARENG, and husband, Appellants, v. BLANKE, and others, Respondents.

Supreme Court

*No. 76–263. Argued May 1, 1979.—Decided June 12, 1979.*
(Also reported in 279 N.W.2d 437.)

For the appellants there were briefs by *Max Raskin* and *Philip Padden* of Milwaukee, and *Alan M. Clack* of Racine, and oral argument by *Mr. Clack.*

For Dr. James K. Blanke and Continental Insurance Company there was a brief by *Foley & Capwell, S.C.*, and oral argument by *Rex Capwell* of Racine.

For E. Michael Kourakis there was a brief by *Otjen, Philipp & Van Ert, S.C.*, and oral argument by *Ernest J. Philipp* of Milwaukee.

HEFFERNAN, J.   This is an appeal from judgments dismissing malpractice causes of action against Dr. James K. Blanke, Dr. E. Michael Kourakis, and their insurer, Continental Insurance Company.

The jury returned a verdict which failed to find either physician negligent. The basic question is whether the jury's verdict was supported by credible evidence. We conclude that there was credible evidence to sustain the verdict and, accordingly, we affirm.

This action was brought by a young married woman and her husband. The claim is made that surgery was unnecessarily and negligently performed and that complications were not recognized and treated promptly and properly.

It is undisputed that, following surgery, Anne Marie Hareng was severely ill and, because of an abdominal infection incurred during the course of her illness, her fallopian tubes have become blocked and she is unable to have children.

The record shows that Anne Marie Hareng noticed pain in the lower right side in the fall of 1971. There is some evidence that would indicate that this pain had persisted for several years. She consulted a Racine physician in May of 1972 and then saw Dr. Lee J. Bowden, an osteopathic physician, late in the same month.

After several office visits, she was admitted to Northwest General Hospital for tests in July of 1972. After tests and further examination, Anne Hareng underwent a laparotomy, an exploratory operation of the abdominal region, and an appendectomy. The surgery was performed by Dr. James K. Blanke, an osteopathic surgeon, on July 13, 1972.

Anne Hareng appeared to make a rapid and uneventful recovery and was released on July 16, 1972. She was readmitted, however, on July 19, 1972, complaining of abdominal pain, fever, diarrhea, nausea, and vomiting. Her condition became steadily worse, and by July 25, 1972, she was near death. On August 3, 1972, she underwent surgery to alleviate peritonitis, which by that time had been diagnosed. It was determined, at the time of the August 3 surgery, that the peritonitis originated where the appendix had been. Apparently the tie-off of the stump had "blown out" and fecal material leaked into the abdominal cavity. Drainage for the abdomen was provided.

On August 8, 1972, however, the drain tube became dislodged and further leakage of fecal matter occurred. Additional corrective surgery was required on the same day.

Following that surgery she was transferred to another hospital, where specialized treatment could be given. There she again underwent surgery for the treatment of abdominal abcesses. She was released from the hospital on September 2, 1972, but was unable to walk until the end of October of 1972.

A year later, October 1973, a diaphragmatic hernia was diagnosed and further surgery was required. There was evidence to show that this hernia had its origin in the earlier surgery. In May of 1974 it was determined that Anne Hareng was sterile. There was evidence to show that this was the result of a fallopian-tube blockage occasioned by a pelvic infection.

Originally the action for malpractice was brought against Dr. Bowden, the Northwest General Hospital, Dr. Blanke, and Dr. Kourakis. A settlement, prior to trial, was achieved with the first two defendants.

In response to questions posed in a special verdict, the jury determined that there was no negligence on the part of Dr. Blanke or Dr. Kourakis. In response to post-verdict motions, the trial court upheld the verdict as supported by credible evidence, in particular the testimony of Dr. Blanke himself. The standard of review of a jury verdict is that it will not be upset if there is any credible evidence which supports it. The evidence will be viewed in the light most favorable to the verdict. *May v. Skelley Oil Co.,* 83 Wis.2d 30, 35, 264 N.W.2d 574 (1978) ; *Nelson v. Travelers Insurance Co.,* 80 Wis.2d 272, 282–83, 259 N.W.2d 48 (1977). This is especially true on review in this court where the verdict has the approval of the trial court. *Toulon v. Nagle,* 67 Wis.2d

233, 242, 226 N.W.2d 480 (1975). The credibility of witnesses and the weight given to their testimony are left to the jury's judgment, and where more than one inference can be drawn from the evidence, this court must accept the inference drawn by the jury. *Roach v. Keane,* 73 Wis.2d 524, 536, 243 N.W.2d 508 (1976).

In this case, nine physicians testified concerning the medical procedures employed in the care of Anne Hareng. In addition, there was testimony from the patient herself, her husband, a neighbor, and parents of Anne and Thomas Hareng. The plaintiffs attempted to show that there was negligence at a number of points in the treatment of Anne Hareng—in the decision to operate, in the performance of the surgery, in the failure to diagnose peritonitis on July 21, 1972, in the failure to diagnose peritonitis on July 25, 1972, and in the delay of surgery to treat peritonitis until August 3, 1972. All of these attempts to prove negligence were countered by some credible evidence to the contrary.

Clearly, Anne Hareng, for a period of well over a year, was subjected to medical and surgical procedures which resulted in severe pain and mental anguish. Moreover, after the termination of the treatment, she was left with severe and disabling residuals.

The question whether this was the result of malpractice or physicians' negligence was one for the jury. Under the standards set forth above, the record demonstrates that the jury's finding that neither Dr. Blanke nor Dr. Kourakis was negligent must be sustained.

While there was evidence submitted by Anne Hareng that neither Dr. Bowden or Dr. Blanke had informed her of the risk of the proposed surgery, Dr. Blanke testified to the contrary, and the record contains a consent form which acknowledged that the procedures had been explained to her.

Anne Hareng testified that, upon her return to the hospital, she was neglected and was not seen by either

Dr. Blanke or Dr. Bowden from July 19 to July 25, 1972. She acknowledged, however, that she did not remember what was going on during part of this period. Dr. Bowden testified that he did see Anne Hareng on the 20th and 21st and continued to see her regularly thereafter during her stay in the hospital. Medical records were introduced which showed that Anne Hareng was seen on the days in respect to which she had no memory.

There was evidence which would tend to show that the surgery of July 13, 1972, should not have been undertaken without additional tests. Dr. Norbert Enzer stated that, in his opinion, there should have been prior consultation with an orthopedist, a gynecologist, and a psychiatrist. Dr. Charles Morrison Schroeder and Dr. Loren J. Yount also stated that the surgery was undertaken without sufficient testing and consultation. There was, however, credible testimony to the contrary. Dr. Pete R. Lombardo testified that the surgery undertaken was in conformance with accepted medical practice. Dr. William Merkow acknowledged that, while additional tests could have been performed prior to surgery, on the basis of the tests the surgery performed conformed to good medical practice.

Dr. Bowden testified that additional tests would not have been helpful and that surgery was warranted because of the chronic pain. Dr. Blanke also testified that no conditions were encountered at the initial surgery which indicated that special tests would have been helpful.

Anne Hareng testified that she was released on July 19, 1972, although she continued to be in pain. Dr. Blanke denied that she made a complaint of pain and stated that he would not have discharged her if she had complained about pain on that date.

There was evidence to show that faulty surgical techniques were used in tying off the stump of the appendix.

Dr. Enzer, Dr. Schroeder, and Dr. Yount said that improper procedures were used in this respect. Yet, Dr. Lombardo stated that the technique used was acceptable. Dr. Merkow stated that medical literature is divided in respect to whether the technique espoused by plaintiffs' witnesses was the better one or whether the technique actually used was better.

There was also conflicting evidence in respect to when peritonitis should have been diagnosed and when corrective surgery optimally would have been performed.

Dr. Blanke testified that Anne Hareng's original condition was enteritis, and that the peritonitis did not commence until July 24 or 25. On the 25th, he called in Dr. Kourakis, who testified that on that date the condition was peritonitis. The witnesses for plaintiffs and defendant disagreed in respect to whether surgery for the peritoneal situation should have been undertaken immediately. Some of the plaintiffs' experts testified that surgery should have been undertaken at the earliest possible moment. Dr. Kourakis testified that, because of Anne Hareng's condition, surgery could not be considered on the date that peritonitis was diagnosed and that Anne Hareng would have to be "built up" before surgery. Drs. Enzer, Schroeder, and Yount were critical of the failure to make the diagnosis and to perform surgery earlier. The testimony of Drs. Blanke, Bowden, and Lombardo stated, to the contrary, that the conduct conformed to acceptable medical practice.

It is clear from the record that the jury was confronted by sharply conflicting testimony in respect to the necessity for the initial surgery, the techniques employed, the diagnosis of peritonitis, and its subsequent treatment. There was credible evidence which if believed by the jury would have supported a verdict that the physicians were negligent. The jury, however, did not make that finding. Instead, it chose to believe the testi-

mony that the defendants were not negligent. As the recital above demonstrates, a verdict of no negligence—a verdict approved by the trial judge—was supported by credible evidence and must be approved on appeal. We affirm the judgments based on the jury's verdict.

It is also claimed that the trial court erred in its re-instruction of the jury. The record shows that, in the course of their deliberations, the jurors returned and one of them stated, "We are still wondering about the meaning of negligence." The court then re-read a portion of the instructions previously given dealing with what is negligence. After re-reading portions of the instruction, the court asked the jury if the re-instruction was helpful. The court received an affirmative response. The court then asked for comment from counsel concerning the re-instruction as given. The senior counsel for the plaintiffs said, "I think the Court read it correctly."

It is now claimed that the entire instruction, including the portion relating to the disclosure of possible risks and care in diagnosis, should have been re-read.

The statute governing re-instructions is sec. 805.13 (5), Stats.:

"**Reinstruction.** After the jury retires, the court may reinstruct the jury as to all or any part of the instructions previously given, or may give supplementary instructions as it deems appropriate."

It is apparent that this is a restatement of a discretionary test previously set forth in decisional law. The necessity for, the extent of, and the form of re-instruction rests in the sound discretion of the court. *Seitz v. Seitz,* 35 Wis.2d 282, 300, 151 N.W.2d 86 (1967) ; *Olson v. Siordia,* 25 Wis.2d 274, 279, 130 N.W.2d 827 (1964).

The trial judge read a portion of the instruction previously read to the jury. A juror acknowledged that

the re-reading was helpful. As an aid to the exercise of discretion, the court asked for assistance of counsel. Counsel for the plaintiffs acquiesced in the instruction and suggested no changes. No error in the instructions offered originally or as re-read has been pointed out. Nor is there any evidence to show that the partial re-reading was misleading or confusing. We conclude that the court did not abuse its discretion in re-reading only a portion of the instructions. It was sufficient to satisfy the question posed by the jury when it re-read the portion offered. The conduct of the trial court in this regard was appropriate.

While it can reasonably be argued that plaintiffs' counsel's express acquiescence constituted waiver, we need not resort to waiver in the present case, for we see no error in the re-instruction given.

Additionally, it is claimed that the trial was infected with error because the jury was permitted to know that Dr. Bowden and the Northwest General Hospital were released by settlement prior to the start of trial.

During trial, Dr. Blanke's attorney asked Anne Hareng why Dr. Bowden was no longer a party. Plaintiffs' counsel immediately objected. In a recess, however, plaintiffs' counsel acknowledged that the jury was entitled to know who was sued. The court ruled that defense counsel could elicit information "that by agreement of the parties, Dr. Bowden and the hospital are no longer parties to the action." No objection was made to this ruling. On return to the courtroom, defense counsel asked, "In effect, a mutual agreement between you and Dr. Bowden was negotiated, is that correct?" The response of Anne Hareng was, "Yes, sir." No objection was made to the question or to the answer.

■

It would appear that there was a clear waiver of the objection when plaintiffs' counsel acquiesced in the

168

court's ruling and also acquiesced in the question and answer in the courtroom. Moreover, we conclude that the testimony was admissible. While public policy provides a limited privilege against disclosure of settlements and offers to settle, the privilege and the exclusion is not absolute. Sec. 904.08, Stats., "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness. . . ."[1] *See also*, McCormick, *Evidence* (2d ed.), sec. 274, p. 664.

It is argued by defendants that the evidence of a prior settlement between Dr. Bowden and the Harengs was admissible to show prejudice on the part of Anne Hareng as a witness because she had a financial interest in playing down the negligence of Dr. Bowden and emphasizing that of Dr. Blanke and Dr. Kourakis. We agree, and we conclude that evidence of a settlement can be used, as in this case, to show possible bias of a witness, although it cannot be used to prove liability or invalidity of a claim at issue.

Also, it is claimed that the plaintiffs were prejudiced by a statement of defense counsel in the final argument. The trouble with this contention is that the statement, "I suggest to you he was the least responsible of any one of the three doctors, he was negotiated out," is not

[1] Sec. 904.08, Stats., reads as follows:

"**Compromise and offers to compromise.** Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This section does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, proving accord and satisfaction, novation or release, or proving an effort to compromise or obstruct a criminal investigation or prosecution."

presented in the context of the record. We cannot from the record determine what was being considered by the jury when the statement was made. Moreover, the plaintiffs claim that the transcript is in error—that, in fact, defense counsel really stated, "He was the *most* responsible . . . ."

We cannot explore the merits of the plaintiffs' argument when the statement in the record is in itself impeached by the party who now raises the objection and when we are unable to determine the context in which the statement appears.

Because no negligence was found in respect to the conduct of either Dr. Blanke or Dr. Kourakis, the question of Dr. Bowden's negligence is of no significance in the disposition of this case. We therefore do not explore the plaintiffs' contention that the court erroneously imposed upon the plaintiffs the burden of proving the negligence of the party who had been released prior to trial. The question in the posture of the case before us is moot and, in view of our disposition of the other issues, irrelevant.

The fact that the jury found no damages were to be awarded to Thomas Hareng, husband of Anne, and no loss of wages was found for Anne Hareng does not demonstrate that the jury was perverse in its verdict.

The record showed that Anne Hareng was not working at the time of the surgery and had not worked for a year prior to that time. She testified that she felt well enough to go to work in 1974 but she did not commence work until 1976, two years later. There thus was credible evidence to show that Anne Hareng was out of work not because of her disability, but because she preferred not to work. While a jury could have awarded damages for a loss of earning *capacity,* under the evidence it was not obliged to do so. We cannot conclude that the jury's verdict was *per se* erroneous.

The finding that Thomas Hareng suffered no damages is not perverse. True, there is evidence which by implication would indicate that he was deprived of his wife's society for the summer and fall of 1972 and a portion of 1973, but no systematic effort to prove loss of society, comfort, or companionship was emphasized by the plaintiffs. Moreover, in this case, under well established rules, the denial of damages in respect to Thomas Hareng's loss of society and Anne Hareng's loss of earnings is not prejudicial. We have said:

" 'The rule is that where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse. . . .' " *Dahl v. K-Mart,* 46 Wis.2d 605, 613, 176 N.W.2d 342 (1970), quoting *Sell v. Milwaukee Automobile Ins. Co.,* 17 Wis.2d 510, 519, 117 N.W.2d 719 (1962).

We conclude that there is evidence to support the jury's verdict finding no negligence by the defendants. The judgments which followed are based upon that verdict.

*By the Court.*—Judgments affirmed.