Steven D. BLACK, Plaintiff-Appellant, †

v.

GUNDERSEN CLINIC, LTD., Dr. Farroukh Ajir, St. Paul Fire & Marine Insurance Company, Wisconsin Department of Health & Social Services, Wisconsin Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 88-1778. Submitted on briefs July 12, 1989.—Decided September 5, 1989.*

(Also reported in 448 N.W.2d 247.)

† Petition to review denied.

For plaintiff-appellant there were briefs by *Thomas M. Fitzpatrick* of *Fitzpatrick, Smyth, Dunn & Fitzpatrick*, La Crosse.

For defendants-respondents there was a brief by *Daniel T. Flaherty* and *Ellen M. Frantz* of *Johns & Flaherty, S.C.,* La Crosse.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Steven Black appeals a judgment dismissing his complaint pursuant to the jury's responses to the special verdict following trial. Black contends that the jury's finding that Dr. Farroukh Ajir made a false representation requires that Ajir be held liable for the resulting damages as a matter of law. Black further contends that the jury's finding that Ajir had misrepresented certain risks of surgery was inconsistent with the jury's determination that Ajir was not negligent. We conclude that strict liability does not apply to physicians' liability and that an untrue representation is not negligence as a matter of law. Because sufficient evidence supports the jury's findings, we affirm.

Steven Black was twenty-seven years old when he began experiencing severe headaches. Ultimately, he was admitted to the hospital and diagnosed as having an arteriovenous malformation in the right parietal area of the brain. This is a congenital condition of a cluster of abnormal arteries and veins in the brain that can cause severe headaches due to temporary bleeding that creates pressure in the cranial vault. The condition is one that could eventually result in hemorrhaging, paralysis, coma, or death.

Ajir, a neurosurgeon with the Gundersen Clinic, was called in to consult with the family in regard to Black's condition. Ajir claimed that he advised Black of all possible courses of treatment, including conservative treatment options and surgery. He also explained the possible effects of surgery, including personality changes. Black's then-wife Melanie testified that Ajir advised her that

paralysis was a possible result of surgery, but denied that any changes in his personality or intelligence were possible because the part of the brain where the surgery would be performed is not related to these functions. Black also indicated that he was assured by Ajir that he would not come out of surgery as a "psycho" or "vegetable." Ajir denies telling either Black or his wife that there was no chance of personality or intellectual deficiencies from the surgery.

Black was then transferred to the University of Wisconsin Hospital under the care of Dr. Manucher Javid, who was to perform the surgery. Javid talked with Black about the alternative modes of care available, concluded that Black was a suitable candidate for surgery, and recommended that surgery be performed to correct the congenital defect. Javid testified that he explained the risks of surgery to Black, including the risk that Black might be intellectually diminished following surgery. Black elected to proceed with the surgery, which was performed by Javid with Ajir assisting. Following surgery, Black had severe personality changes and diminished intellectual capacity. He became paranoid, impatient, and was unable to hold even the most menial employment. His behavior became bizarre and erratic, and ultimately caused a divorce.

The jury found that Ajir represented that there was no risk of personality or intellectual impairment and also found that such representation was untrue. However, the jury found no negligence in Ajir's care and treatment of Black.

Black first contends that the negligent misrepresentation in regard to the risks of surgery makes Ajir strictly liable. Black urges us to conclude that when a physician makes an affirmative representation that is not true but is relied upon by a patient, the strict liability doctrine

should hold the physician liable for damages that occur as a result of such misrepresentation.

Wisconsin recognizes a physician's liability under the law of medical malpractice for negligent conduct. We have not recognized the imposition of liability upon a doctor under the strict liability doctrine based upon misrepresentation. Indeed, the Wisconsin Supreme Court specifically declined to do so in *Hoven v. Kelble,* 79 Wis. 2d 444, 256 N.W.2d 379 (1977). Because Wisconsin courts do not recognize a physician's liability based on the strict liability doctrine for negligent misrepresentation, the trial court did not err.

Black next contends that Ajir's untrue representation was negligence as a matter of law. Black urges this court to ignore the jury's findings that Ajir was not negligent.

We reject this argument. It is the jury's function to determine whether an inaccurate statement constitutes negligence. A court cannot usurp this function unless no reasonable jury could find that an actor failed to exercise ordinary care. *LePoidevin by Dye v. Wilson,* 111 Wis. 2d 116, 124, 330 N.W.2d 555, 559 (1983).

Next we examine whether there is sufficient evidence to support the jury's conclusion that Ajir was not negligent, even though it found that he made an untrue representation regarding the risks of surgery as to intellectual and personality functions. When reviewing jury verdicts on appeal, we must view the evidence most favorable to the verdict and affirm if there is any credible evidence upon which the jury could have based its decision. *Cudd v. Crownhart,* 122 Wis. 2d 656, 661, 364 N.W.2d 158, 161 (Ct. App. 1985) (*citing, Roach v.*

*Keane,* 73 Wis. 2d 524, 536, 243 N.W.2d 508, 515 (1976)). We conclude that there is credible evidence to support the jury's decision.

The record discloses that both Javid and Dr. Glenn Meyer, a neurosurgeon at the Medical College of Wisconsin and expert witness at the trial, testified that personality or intellectual changes to a patient such as Black were extremely rare. Meyer indicated that there was less than a one percent chance of such changes occurring. Several experts concluded that the dangers of changes in personality and intellect were greater if the surgery was not performed.

This evidence was sufficient for the jury to conclude that although a misrepresentation regarding the risk of intellectual or personality impairment as a result of this surgery was made, the chances of such impairment were extremely remote. Although the jury found Ajir's advice as to the risks to be technically untrue, it also found the risk to be so remote that the representation did not subject Black to an unreasonable risk of harm. Once the jury made this determination, it could, and did, find that Ajir was not negligent.

A representation that is technically inaccurate is not negligence as a matter of law. The question of whether the statement exposes the patient to an unreasonable risk of harm is a question for the jury. To hold otherwise indicates that an incorrect representation is negligence as a matter of law without regard to the nature or effect of the inaccuracy. Perfection is a standard to which no profession can possibly adhere. Doctors are required to exercise reasonable care, they are not required to be perfect. The threat of legally-mandated negligence for any possible inaccuracy will result in equivocal advice by doctors to their patients. Further-

more, such a conclusion would accept the principle of strict liability, in fact, if not in name.

■

Based on the foregoing, we conclude that there is sufficient evidence upon which the jury could find that although the statements Ajir made were technically inaccurate, they did not subject Black to an unreasonable risk of harm and, therefore, were not negligent. Consequently, the trial court did not err by granting a motion to dismiss Black's complaint based upon the jury's answers.

*By the Court.*—Judgment affirmed.