Adam ANDERSON, by his Guardian Ad Litem, Ardell W. Skow, Bonnie Anderson and Leroy Anderson, Plaintiffs-Appellants, †

v.

ALFA-LAVAL AGRI, INC., Defendant-Respondent.

Court of Appeals

No. 96–0577. *Submitted on briefs November 27, 1996.—Decided February 18, 1997.*

(Also reported in 564 N.W.2d 788.)

---

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Ardell W. Skow* and *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.*, New Richmond.

For the defendant-respondent the cause was submitted on the brief of *Peter J. Hickey* and *Jeffrey T. DeMeuse* of *Everson, Whitney, Everson & Brehm, S.C.*, Green Bay.

Before Cane, P.J., Myse and Carlson,[1] JJ.

MYSE, J. Adam Anderson and his parents, Bonnie and Leroy Anderson, appeal a judgment resulting from a jury verdict finding no negligence on the part of Alfa-Laval Agri, Inc. The Andersons contend that the trial court erred by refusing to give requested customized instructions regarding Alfa-Laval's duties, that the no negligence verdict was contrary to the weight of the evidence and that the trial court erred by advising the jury that the Andersons had settled their claims with a series of other defendants. Although we conclude that the requested customized jury instructions better focus the issues in this specific case as to Alfa-Laval's duties, we nonetheless conclude that the pattern jury instructions given are adequate. We further conclude that although the court erred by advising the jury of the Andersons' settlement with other defendants, the error was not prejudicial to the Andersons and that there is sufficient evidence for the jury to conclude that Alfa-Laval was not negligent. Accordingly, we affirm the judgment.

This tragic case involves a claim for damages resulting from two-year-old Adam Anderson's ingestion of an extremely caustic chemical that had collected in a cup from a pump in Leslie Smith's milk house while Adam's mother, Bonnie Anderson, was assisting Smith in milking Smith's dairy herd. Smith was a dairy farmer near a farm the Andersons had been renting. Bonnie also assisted her brother-in-law, Roland Anderson, as a herdsman on the farm he operated. Her duties included milking the cows and cleaning the milking equipment which was manufactured by Surge, an Alfa-

---

[1] Circuit Judge Gary L. Carlson is sitting by special assignment pursuant to the Judicial Exchange Program.

Laval competitor. Smith asked Bonnie to assist him with the milking of his herd several weeks before Adam's injury. Smith demonstrated his Alfa-Laval milk cleaning equipment and how the equipment was to be operated. Bonnie was familiar with the Surge milk line cleaning products because of the farm she and her husband, Leroy, rented, as well as from her work as a herdsman on Roland's farm. The Surge system uses a caustic chemical to clean the milk line similar to the Alfa-Laval unit Smith uses.

On the day of Adam's injury, Smith called Bonnie and asked if she could assist in milking his herd. Bonnie responded that she was required to care for her five children and would only be able to assist if she were able to bring the children to the Smith farm during the milking. Smith agreed and Bonnie arrived with her five children, two of whom, Brent and Adam, were in the milk house with Bonnie while the three girls were playing with kittens by the calf pen.

Smith had purchased the Alfa-Laval milk line cleaning equipment in 1978. This system utilized one cup of an extremely caustic chemical to flush and sanitize the pipes that transport the milk from the barn to the bulk tank in the milk house. While Alfa-Laval manufactures a "closed loop" milk line cleaning system that automatically injects the chemical in a metered dosage, Smith's equipment required the manual injection of the chemical into the system after each milking, twice per day. The pump through which the chemical was injected into the milk lines dripped the chemical, a clear liquid, onto the floor. Therefore, Smith placed the cup that was used to measure the liquid injected into the system under the drip to catch the chemical so that it would not spill on the floor.

Bonnie was aware of this practice and on two previous milkings had entered the milk house to place the cup away from the children's reach before she began her milking chores. On the day in question, however, she did not remove the cup, which Adam apparently saw. He ingested a small amount of the caustic chemical, which resulted in the severe burning of his esophagus and stomach and other extremely serious injuries.

The Andersons commenced an action for the recovery of Adam's damages against Alfa-Laval Agri; Pro-Chemicals, the manufacturer of the chemical solution and the drum in which it was sold and stored; Beckson Industries, the manufacturer of the pump used to take the chemical out of the drum where the chemical leak was located; Wally Potter, the distributor of the Alfa-Laval system; as well as the distributor of Pro Chemicals and Beckson and Smith. Prior to the trial, the plaintiffs settled with each of the defendants, except Alfa-Laval, although the document reflecting that settlement had not been signed by all interested parties when the trial against Alfa-Laval started.

At the trial, counsel for the Andersons asked the court to modify the caption to reflect the settlements with the other defendants and moved in limine for a court order eliminating reference to any settlement with the other defendants. The court denied the motion, advised the jury of the full caption containing the names of each of the defendants and informed the jury that a "negotiated resolution" had been reached with the other parties in the case. Reference to the negotiated settlement was also made to the jury by Alfa-Laval's counsel.

At the conclusion of the trial, the jury found that Alfa-Laval and Wally Potter, the distributor of the sys-

tem chemicals and pump, were neither negligent nor strictly liable. The jury concluded also that Smith was not negligent and apportioned negligence among the other defendants by finding 50% of the causal negligence to be attributable to Bonnie, 35% to Pro chemicals and 15% to Beckson. The jury awarded damages of $73,000 for future medical expenses; $50,000 for past pain, suffering and disability; and $100,000 for future pain, suffering and disability. The loss of future earnings was in the amount of $500,000, and the loss of society and companionship awarded to Bonnie and Leroy was set at zero.

The Andersons filed post-verdict motions requesting that the trial court change the answer of zero negligence against Alfa-Laval because it was contrary to the weight of the credible evidence, asking for a new trial based upon the assertion that the verdict was perverse and that a new trial was required in the interest of justice. The trial court denied all motions and entered judgment upon the jury's verdict dismissing the Andersons' complaint.

The Andersons first contend that the trial court erred by refusing to submit to the jury a series of proposed instructions specifically tailored to address various theories of liability asserted under the specific facts of this case. The trial court declined to submit the requested instructions after concluding that the instructions evidenced partiality on behalf of the Andersons and that the standard jury instructions adequately advised the jury as to the applicable law in the case.

A trial court has wide discretion as to the instructions it will give to a jury in any particular case. *McMahon v. Brown*, 125 Wis. 2d 351, 354, 371 N.W.2d

414, 416 (Ct. App. 1985). Instructions must fully and fairly inform the jury as to the applicable principles of law. *Runjo v. St. Paul Fire & Marine Ins. Co.,* 197 Wis. 2d 594, 602, 541 N.W.2d 173, 177 (Ct. App. 1995). As long as the instructions adequately advise the jury as to the law it is to apply, the court has the discretion to decline to give other instructions even though they may properly state the law to be applied. *Northwestern Nat'l Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 263-64, 400 N.W.2d 33, 41 (Ct. App. 1986). The instructions given are to be considered in their totality to determine whether they properly state the law to be applied. *Steinberg v. Arcilla,* 194 Wis. 2d 759, 774, 535 N.W.2d 444, 449 (Ct. App. 1995).

If the instructions are not erroneous and adequately inform the jury as to the law to be applied, the court's exercise of discretion will be affirmed on appeal. *Id.* If an instruction is erroneous or the court erroneously refused to give a proper instruction, a new trial will not be ordered unless the court's error was prejudicial. *Nowatske v. Osterloh,* 198 Wis. 2d 419, 429, 543 N.W.2d 265, 268 (1996). An error is prejudicial only if it appears that the result would have been different had the error not occurred. *Id.*

We start our analysis by examining the Andersons' claim that in a complex fact situation involving theories of liability of both negligence and strict liability, it is appropriate to tailor specific instructions to the evidence. We agree. Standard jury instructions are to assist the court but should not be used as a substitute for the court developing appropriate instructions relating to the specific facts of each case. Indeed, the introduction to Wisconsin's civil jury instructions cautions trial judges that pattern jury instructions are

tools to assist the court, but do not eliminate the court's need to refine the instructions based upon the specific facts of any particular case. I WISCONSIN J I—CIVIL, at xix (1995).

In this case, a series of tailored instructions were requested involving the defendant's duty to incorporate foreseeable safety features into its product and the defendant's duty to all foreseeable persons who would have contact with the product, including bystanders and not just the purchaser or consumer of the product. Customized jury instructions were also sought in regard to the defendant's post-sales and nondelegable duties. The trial court, however, denied these requested instructions.

Each of the requested instructions seems appropriate under the specific facts of this case. The Andersons argue that the defendants failed to incorporate feasible safety features into the product by marketing an open rather than closed system. An open system requires the caustic chemical used to clean the milk lines to be mixed and injected from outside of the system itself. The Andersons further were concerned that the pattern jury instructions did not specifically explain that the defendant had a duty to all foreseeable persons including bystanders or children, such as Adam, who may be injured by the product rather than merely the purchaser or user of the product.

The Andersons asserted that after learning of information regarding the dangers the caustic chemicals posed, Alfa-Laval should have sent an advisory warning after the sale even though the sale was completed at some prior date. The Andersons were also concerned that Alfa-Laval delegated the responsibility to warn of the dangers of the caustic chemical to the distributor, which the Andersons contend violated

Alfa-Laval's duty to its consumers. The evidence raised each of these issues, and appropriate instructions as to each would have assisted the jury in its deliberations.

If the trial court was concerned that the requested instructions evidenced partiality, the court should have tailored instructions in a neutral way so as to address the Andersons' legitimate concerns. The better practice is for trial courts to customize the instructions based on the specific facts of the case to better assist the jury in understanding the nature of the law and how the law is to be applied to those specific facts. The trial court's refusal to accept the requested instructions and failure to develop its own instructions to address the areas of concern denied the jury the benefit of instructions specifically tailored to the facts before them. While we conclude that the better practice would have required the trial court to customize at least some of the instructions rather than to rely entirely on the standard jury instructions, this is not the standard of review we are required to apply to this claimed error.

We must examine the instructions given in their totality and determine whether these instructions sufficiently advised the jury as to the proper legal principles they were to apply to the facts of this case. *Steinberg*, 194 Wis. 2d at 774, 535 N.W.2d at 449. The Andersons concede the instructions given by the trial court were correct statements of law. The claimed error is that they were incomplete because they were not specifically tailored to the facts of this case. After examining the instructions in their totality, we conclude that the trial court's instructions were accurate and sufficiently complete to advise the jury as to the proper legal principles it was to apply.

The court gave the standard Wisconsin civil jury instructions. The negligence jury instructions given were: 1005—definition of negligence, 1012—parents' duty to protect minor children, 1019—evidence of custom and usage, 3240—duty of manufacturer, 3242—duty of manufacturer (supplier) to warn, and 3246—duty of manufacturer (seller) who undertakes to give instructions to the use of a machine (product), and an instruction on the negligence standard of corporate employees and agents. The following strict liability instructions were also given: 3260—duty of manufacturer to ultimate user and 3262—duty of manufacturer (supplier) to warn. These instructions are sufficient to apprise the jury as to the nature of the legal principles to be applied. Accordingly, we conclude that the trial court adequately instructed the jury, even though it should have better assisted the jury with instructions specifically tailored to the factual issues raised in this case.

Even if the failure to give the requested instructions was error, we conclude it was not prejudicial. An error is prejudicial if it appears that a different result would have been reached had there been no error. *Nowatske*, 198 Wis. 2d at 429, 543 N.W.2d at 268. This requires a probability that the jury was misled and that a different result is probable, not just a mere possibility. *See Strait v. Crary*, 173 Wis. 2d 377, 385, 496 N.W.2d 634, 637 (Ct. App. 1992). As we discuss more completely later in this opinion, the jury had sufficient evidence before it to support its conclusions of negligence on the part of Bonnie, Beckson and Pro Chemicals. Therefore, we cannot conclude that a different result is probable had the requested instructions been given. Because a different result is not probable,

the Andersons were not prejudiced by the failure to give the requested instructions.

The Andersons next contend that the trial court erred by reading the entire caption of the case including the defendants who were not present at trial because they had entered into a *Pierringer*[2] settlement, and that the court erred by advising the jury of the existence of a settlement between the Andersons and the other defendants named in the caption. We disagree that the court erred by reading the caption. We also conclude that although the court did err by advising the jury as to the existence of a negotiated resolution between the Andersons and the other identified defendants, that error was harmless.

■■

The caption to be read to the jury is the caption as it exists on the day of trial. *Stoppleworth v. Refuse Hideaway*, 200 Wis. 2d 512, 523-24, 546 N.W.2d 870, 874 (1996). The court can modify the caption to reflect settlements that occur before trial. In this case, the trial court had discretion to accept the parties' representations of a settlement and amend the caption accordingly or to require the proper documentation before entering the dismissal. Here the court chose to require the proper documentation. This is properly left to the discretion of the trial court. Once the court decided to require the proper documentation, the caption included all of the parties, including the settling defendants and, under *Stoppleworth*, the court was required to read this caption to the jury. Further, the jury was not given any additional information. Because the jury had to assess comparative negligence to those defendants, it was necessarily aware of them.

---

[2] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

As to the references made regarding the Andersons' settlements with other defendants, the trial court appeared to accept Alfa-Laval's contention that advising the jury of settlements existing between the plaintiffs and other defendants is authorized, if not required, by *Hareng v. Blanke*, 90 Wis. 2d 158, 279 N.W.2d 437 (1979). We conclude that *Hareng* is inapposite to the facts of this case. *Hareng* recognizes that settlement negotiations are not privileged when introduced for another purpose such as demonstrating bias or prejudice of a witness. *Id.* at 167-68, 279 N.W.2d at 441. That is a correct statement of the law but is inapplicable to the facts of this case. There was no contention that the settlement among the other defendants changed the testimony of any witness or that the posture of any of the settling defendants was significantly different as a result of the settlement. While we recognize that under certain circumstances it may be necessary to disclose the existence of a settlement, we conclude that none of the circumstances authorizing such a disclosure existed in this case.

We must now determine whether the trial court's error resulted in prejudice to the Andersons. This task is confounded by our inability to speculate as to the mental processes of the jurors as they reached their verdict. We note that the jury not only concluded that Alfa-Laval was not negligent but awarded zero damages for the loss of society and companionship, notwithstanding the uncontradicted evidence as to special care, medical treatment and transportation required by Adam's parents in obtaining the necessary medical care required for this injury. We further note that although the trial court made reference at the beginning of this long and complex case to a "negotiated resolution," the jury was not advised that money

had been paid to the Andersons by any of the defendants named in the caption. Also, some care was taken to use language which was as neutral as possible in light of the court's determination that it was appropriate to identify the individual defendants who were not participating in the trial.

Prejudice exists only if a different result is likely to occur upon retrial. *Nowatske*, 198 Wis. 2d at 429, 543 N.W.2d at 268; *Hareng*, 90 Wis. 2d at 166-67, 279 N.W.2d at 441; § 904.08(2), STATS. In this case, Alfa-Laval's liability is predicated upon its manufacture and sale of a milk line cleaning system that involved the use of caustic chemicals. As will be more thoroughly discussed in the following paragraphs, the circumstances resulting in Adam's injury were the result of a leakage from a pump made by Beckson Industries, involving a caustic chemical manufactured and sold by Pro Chemicals. This leakage was caught in a cup placed there by Smith. Bonnie's knowledge of the dangerous and caustic nature of the chemical and her past practice of placing the cup out of reach of children because of the danger presented to children permitted the jury to conclude that the responsibility for Adam's injuries rested upon his mother for improper supervision in failing to place the cup outside of Adam's reach. The jury also found the manufacturer of the pump that leaked and the manufacturer of the caustic chemical who failed to appropriately warn as to its dangerous properties to be negligent. Under these circumstances, we cannot say that the jury made this determination based upon a conclusion that the Andersons had received compensation from other sources.

The evidence is sufficient to permit a jury to conclude that the responsibility for this injury rests not

upon the manufacturer of the system, but on others based on their conduct. We, therefore, cannot conclude that the jury was inappropriately induced to reach its determination based upon its belief that the Andersons had already received compensation from other sources. As a result, we cannot say that a different result is likely to occur if a new trial is ordered. Consequently, we conclude that the Andersons were not prejudiced by the court's erroneous disclosure that a negotiated resolution had occurred.

The Andersons next contend that the verdict finding no negligence on Alfa-Laval was contrary to the evidence and requires a new trial. In reviewing a claim that a verdict is contrary to the evidence, a reviewing court is required to construe all evidence and inferences to be drawn from the evidence in favor of the jury verdict. *Black v. Gundersen Clinic, Ltd.*, 152 Wis. 2d 210, 214, 448 N.W.2d 247, 249 (Ct. App. 1989). If there is any credible evidence that will support the jury's verdict, the verdict must be affirmed. *Richards v. Mendivil*, 200 Wis. 2d 665, 671, 548 N.W.2d 85, 88 (Ct. App. 1996). We must review a jury's verdict with great deference and indulge in every presumption in support of the verdict. *Id.* This presumption is even more true when the verdict has the trial court's approval. *Id.*

The Andersons argue that Alfa-Laval is negligent as a matter of law and that therefore a new trial is required. We agree that the evidence is sufficient to indicate that as to Alfa-Laval's failure to warn about the caustic nature of the chemicals used in its milk line cleaning system, Alfa-Laval could be found negligent. The manual Alfa-Laval furnished to purchasers of the system makes no reference to the nature of the chemi-

cals or the extremely serious injury that could result from the chemical being ingested or coming in contact with a person's eyes or other portions of the body. Alfa-Laval may not rely on the chemical manufacturer for such warning and may not rely on the distributor who advised purchasers of the system of the dangerous nature of the chemicals required to be used in this system. *See Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 682-83, 280 N.W.2d 226, 231-32 (1979); *see also Westphal v. E.I. DuPont De Nemours & Co.*, 192 Wis. 2d 347, 364-66, 531 N.W.2d 386, 391-92 (Ct. App. 1995). The absence of such a warning is negligence as a matter of law. *See Westphal*, 192 Wis. 2d at 365-66, 531 N.W.2d at 392.

Alfa-Laval has a duty, at the very least, to advise users of the equipment as to the dangerous nature of the chemicals required to be used in the cleaning of milk lines by either the open or closed systems it manufactures. The evidence demonstrated that not only was the information pamphlet given to customers when the machine is purchased silent as to any such danger, no other warning or notice of the dangerous nature of the chemical was provided by Alfa-laval to those who used or would come in contact with this equipment. Alfa-Laval was aware that young children were commonly present around this equipment. Further, a study of farm children ingesting similar chemicals was published in 1987, the year before Adam was injured. Under the facts of this case, we conclude that Alfa-Laval's failure to warn as to the caustic nature of the chemicals required in their cleaning system is negligence as a matter of law.

The existence of negligence alone, however, is insufficient to impose liability upon this defendant.

The negligence must also be the cause of the injury. The jury determined that the responsibility for Adam's injuries rested with his mother, who was fully aware of the dangers of the chemicals used to clean the lines; Beckson, who manufactured the pump from which the chemicals leaked; and Pro Chemicals, the manufacturer of the chemicals. Bonnie was fully aware of the nature of the chemicals used and Pro Chemicals did warn of the chemical's dangerous property. The caustic chemical Adam ingested was leaking from a pump Beckson manufactured and caught in a cup Smith placed under the leak. Because the chemical's dangerous nature was known to Bonnie and Smith, Alfa-Laval's failure to warn was not the cause as a matter of law for Adam's injuries. Accordingly, we conclude that a new trial is not required based upon the jury's failure to find negligence on Alfa-Laval.

Finally, the Andersons contend that the jury verdict was perverse and that a new trial should be ordered in the interest of justice. Our previous discussions adequately demonstrate why we conclude that such assignments of error are without merit. This tragic case was tried fully and completely for eight full days. The jury was adequately instructed as to the law to be applied and the circumstances of Adam's injury are sufficient to support the jury's conclusion that Alfa-Laval was not negligent for Adam's injury. Accordingly, we decline to order a new trial based upon the assertion that the verdict was perverse and conclude that a new trial in the interest of justice is not warranted. The judgment is affirmed.

*By the Court.*—Judgment affirmed.