Kara HORST and Jonathan Horst, by his Guardian ad Litem, Plaintiffs-Appellants,†

v.

DEERE & COMPANY, a Delaware Corporation, Defendant-Respondent.

Court of Appeals

*No. 2006AP2933. Submitted on briefs January 31, 2008. —Decided April 30, 2008.*

2008 WI App 65

(Also reported in 752 N.W.2d 406.)

† Petition to review granted 9/11/08.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John C. Cabaniss* and *Rachel N. Schepp* of *von Briesen & Roper, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael L. Zaleski* of *Quarles & Brady LLP*, Madison.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. SNYDER, J. Jonathan Horst, by his guardian ad litem, and Jonathan's mother, Kara Horst, appeal from a judgment dismissing their personal injury claim against Deere & Company. The Horsts contend that they are entitled to a new trial because the court provided an erroneous jury instruction on the issue of Deere's duty of care in the design of its products and that there is a probability that the erroneous instruction and the corresponding special verdict question affected the outcome of the trial. We disagree with the Horsts' characterization of a manufacturer's duty and therefore we affirm the judgment dismissing the Horsts' claim together with the order denying them a new trial.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. On May 2, 2004, the Horst family returned home from an overnight trip to the Wisconsin Dells. Jonathan's father, Michael, decided to mow the lawn when they arrived home late that afternoon. Kara planned to watch Jonathan, who was two years old at the time, and his older brother, Adam, while she put

laundry out to hang on the line. Kara stopped to use the bathroom and Michael went out on the lawn tractor to mow.

¶ 3. Michael mowed across the yard and came up to the gravel driveway. At that point, he depressed the override switch, put the lawn tractor into reverse gear, and began to mow backward toward the house. He then mowed forward along the back of the house to the patio, stopped the tractor, depressed the override again and began to mow in reverse. Michael was looking over his right shoulder and never saw Jonathan, who was to his left.

¶ 4. Kara was in the master bedroom and heard Michael hit something with the lawn tractor. She heard Michael scream and she went running to see what had happened. Michael was screaming that he had cut Jonathan's feet off, and Kara called 911. A nurse who was at a nearby home came to Jonathan's aid and an ambulance arrived shortly thereafter. The ambulance took Jonathan to the local hospital, and he was transferred to Children's Hospital by Flight for Life one-half hour later. Jonathan underwent multiple surgeries and endured long-term follow-up care. He now wears prosthetics on both legs.

¶ 5. The Horsts filed a lawsuit claiming negligence and strict liability against Deere, the manufacturer of the lawn tractor. They claimed punitive damages also, alleging that the design of Deere's tractor demonstrated a deliberate disregard for safety. Horsts asserted that Deere was at fault for designing a lawn tractor that was unreasonably dangerous, specifically with regard to the tractor's override switch that allowed the operator to mow in reverse. Deere moved for summary judgment on grounds that the "consumer contemplation test" barred Jonathan's strict liability

claim. Deere also argued that the negligence claim and claim for punitive damages failed as a matter of law.

¶ 6. In response, the Horsts argued that Jonathan was a bystander, and under the supreme court's decision in *Howes v. Hansen*, 56 Wis. 2d 247, 201 N.W.2d 825 (1972), strict liability "applies to bystanders as well as users and consumers." Horsts asserted that even if the danger was open and obvious to the operator, it did not immunize Deere from strict liability where innocent bystanders were concerned.

¶ 7. The circuit court denied Deere's motion, holding that "[s]ufficient factual issues exist that should be presented for jury determination. The issue of unreasonable dangerousness and consumer contemplation are questions for the trier of fact." The court cited *Howes*, summarizing the supreme court's ruling as follows: "[S]trict liability of a seller of a product for physical harm to a user or consumer could be extended to bystanders, such as [a] two year old plaintiff who was injured when his foot came in contact with a power mower manufactured by the defendant." The case proceeded to trial.

¶ 8. At the close of evidence, the Horsts requested Wis JI—Civil 3260, modified to reflect Jonathan's status as a bystander, which read (modifications in italics):

> A manufacturer of a product who sells a defective product which is unreasonably dangerous to the ordinary user, consumer *or bystander*, and which is expected and does reach the consumer without substantial change in the condition in which it is sold, is regarded by law as responsible for harm caused by the product even though he or she has exercised all possible care in the preparation and sale of the product, provided the product was being used for the purpose for which it was designed and intended to be used.

426

A product is said to be defective when it is in a condition not contemplated by the ordinary user, consumer *or bystander* which is unreasonably dangerous to the ordinary user, consumer *or bystander*, and the defect arose out of design, manufacture, or inspection while the article was in the control of the manufacturer. A defective product *is* unreasonably *dangerous to the* ordinary user, consumer *or bystander* when it is dangerous to an extent beyond that which would be contemplated by the ordinary user, consumer *or bystander* possessing the knowledge of the product's characteristics which were common to the community. A product is not defective if it is safe for normal use.

A manufacturer is not under a duty to manufacture a product which is absolutely free from all possible harm to every individual. It is the duty of the manufacturer not to place upon the market a defective product which is unreasonably dangerous to the ordinary user, consumer *or bystander*.

¶ 9. The circuit court rejected the Horsts injection of the words "or bystander" throughout the instruction and instead, over the Horsts' objection, used the pattern jury instruction with the following addition at the end: "The law in Wisconsin imposes a duty on a manufacturer to a bystander, if the bystander is injured by a defective product, which is unreasonably dangerous to the ordinary user or consumer."

¶ 10. The Horsts also requested a special verdict question asking the jury whether the lawnmower was defective so as to be unreasonably dangerous to a bystander. The circuit court denied the request and submitted the following question: "Do you find from the evidence that the subject lawn tractor, when it left the hands of Defendant, Deere & Company, was in a defective condition so as to be unreasonably dangerous to a prospective user/consumer?" The jury answered this question "no."

427

¶ 11. The Horsts filed a motion for a new trial, alleging that the jury had been improperly instructed on the duty of a manufacturer to a bystander. The circuit court denied the motion. The Horsts appeal.

## DISCUSSION

¶ 12. The Horsts present two issues on appeal. First, they ask whether the circuit court erred "in instructing the jury that a manufacturer's [RESTATEMENT (SECOND) OF TORTS § 402A (1965)][1] duty to design a product that is not unreasonably dangerous to bystanders is satisfied if the product is not unreasonably dangerous to users." The Horsts assert that Deere had a duty to manufacture a lawn tractor that was not defective and unreasonably dangerous to a bystander. The Horsts contend that the circuit court's modified jury instruction foreclosed the jury from deciding whether Deere's tractor design, which included an override switch for mowing in reverse, resulted in a product that was unreasonably dangerous to an innocent bystander like Jonathan. Second, if we determine that the jury instruction and the corresponding special verdict question were erroneous, the Horsts ask whether the error contributed to the outcome of the trial such that a new trial is warranted. If so, the Horsts propose the only remedy is a new trial with a properly

---

[1] All references to the RESTATEMENT (SECOND) OF TORTS § 402A are to the 1965 version. The products liability portion of the RESTATEMENT has been updated as RESTATEMENT (THIRD) OF TORTS, Products Liability (1998). Wisconsin courts have not adopted RESTATEMENT (THIRD) OF TORTS, Products Liability § 2(b), which injects an element of foreseeability of risk into the strict products liability analysis. *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 72, 245 Wis. 2d 772, 629 N.W.2d 727.

instructed jury and a properly crafted special verdict question.

¶ 13. The circuit court has broad discretion as to the instructions it will give to a jury in any particular case. *McMahon v. Brown*, 125 Wis. 2d 351, 354, 371 N.W.2d 414 (Ct. App. 1985). Instructions must fully and fairly inform the jury about the applicable principles of law. *Anderson v. Alfa-Laval Agri, Inc.*, 209 Wis. 2d 337, 345, 564 N.W.2d 788 (Ct. App. 1997). As long as the instructions adequately advise the jury of the law it is to apply, the court has the discretion to decline to give alternative or modified instructions even though they may properly state the law. *Id.* If the jury instructions are not erroneous, the court's exercise of discretion will be affirmed on appeal. *Id.* If an instruction is erroneous, a new trial will not be ordered unless the court's error was prejudicial. *Id.* Accordingly, we turn to the law of strict products liability to determine whether the court's jury instruction, which did not incorporate the Horsts's proposed modifications, properly informed the jury of the applicable legal principles.

¶ 14. Strict products liability law holds manufacturers accountable for selling defective and unreasonably dangerous products that cause injury to consumers. Wisconsin courts have adhered to the rule set forth in RESTATEMENT (SECOND) OF TORTS § 402A since 1967. *See Dippel v. Sciano*, 37 Wis. 2d 443, 460, 155 N.W.2d 55 (1967). To prevail, a claimant must prove five elements: (1) the product was defective when it left the defendant's possession, (2) it was unreasonably dangerous to the user or consumer, (3) the defect was a cause of the claimed injuries, (4) the transaction was part of the seller's usual business, and (5) the product was

received by the consumer without a substantial change of condition. *See id.* The analysis for whether a product had an unreasonably dangerous defect became known as the consumer contemplation test. Essentially, the consumer contemplation test states that the claimant must show that the product was more dangerous than the ordinary consumer or user would have contemplated. *See Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 77, 245 Wis. 2d 772, 629 N.W.2d 727.

¶ 15. In 1972, our supreme court revisited strict products liability, this time in the context of injury to a bystander. In *Howes*, 56 Wis. 2d at 260, the court noted that approximately ten jurisdictions had extended strict liability to "bystanders who are innocently injured." The court also observed that some jurisdictions have decided that bystanders were in need of greater protection than the user or consumer of an unreasonably dangerous product. *Id.* The Horsts argue that *Howes* opened the door to a broadened consumer contemplation test that could be characterized as the "bystander contemplation test."

¶ 16. The *Howes* court stated, "The same reasons that prompted us in [*Dippel*] to adopt the concept of strict liability to users or consumers cause us now to extend that concept to bystanders." *Howes*, 56 Wis. 2d at 254. It reasoned that "[t]here is no essential difference between the injured user or consumer and the injured bystander." *Id.* at 255. Moreover, the *Howes* opinion suggests that bystanders might be entitled to more protection than product users and consumers:

> The reasons for the initial adoption of strict liability are uniformly felt to apply equally to the bystander. Some have gone much further by suggesting that because of his inability to "kick the tires" the bystander is in need of more protection than the user or consumer.

Thus we conclude that the trial court did not err in overruling the appellant's demurrer on the grounds that the concept of strict liability applied for the protection of the bystander here. In extending this potential liability, we are further implementing the policy that a manufacturer should be strictly liable in tort when he places a defective article on the market "that causes injury to a human being."

*Id.* at 260 (citations omitted).

¶ 17. Three years after *Howes*, our supreme court took up the case of *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis. 2d 326, 230 N.W.2d 794 (1975). In *Vincer*, a two-year-old boy was injured when he fell into his grandparents' swimming pool. *Id.* at 327. The retractable ladder had allegedly been left down, allowing the boy access to the pool. *Id.* Deere posits that *Vincer* is a bystander case and notes the similarities with the present case: an unsupervised two year old is injured by a product that presents an obvious danger to an unattended child and the average consumer would understand that danger.

¶ 18. The Horsts dispute that *Vincer* is a bystander case emphasizing that "access to an above-ground swimming pool . . . involved a risk of harm to all children using the pool—not bystanders making no use of the pool." We appreciate the distinction; nonetheless, *Vincer* teaches that unreasonable danger, a distinct element in a strict products liability claim, is based on consumer expectations.[2] *See also Sumnicht v. Toyota Motor Sales, U.S.A, Inc.*, 121 Wis. 2d 338, 367–70, 360

---

[2] Our supreme court cited with approval RESTATEMENT (SECOND) OF TORTS § 402A comment g, which provides that a product is defective "where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate

N.W.2d 2 (1984). Whether a product has an unreasonably dangerous defect is tied to the "reasonable expectations of the ordinary consumer concerning the characteristics of this type of product. If the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective." *Vincer*, 69 Wis. 2d at 332.

¶ 19. In 1993, the United States District Court for the Eastern District of Wisconsin briefly addressed the issue of strict products liability and bystanders. In *Komanekin v. Inland Truck Parts*, 819 F. Supp. 802, 808 (1993), the court acknowledged that in Wisconsin, "unreasonable danger is seen from the consumer's perspective alone." The court set forth the key inquiry as "whether the actual design of the product 'presents dangers not apparent to the ordinary consumer or user.' " *Id.* (citations omitted). At the end of its iteration of Wisconsin strict products liability law, the court added the following observation:

> [I]t is worth noting that "bystanders" . . . as well as "users" and "consumers," are protected by the doctrine of strict liability. In a bystander case, presumably, a product is unreasonably dangerous if it presents dangers not apparent to the ordinary bystander. Thus, a

consumer, which will be unreasonably dangerous to him [or her]." *Vincer v. Esther William s All-Aluminum Swimming Pool Co.*, 69 Wis. 2d 326, 330, 230 N.W.2d 794 (1975). The court also relied on § 402A comment i, which provides in pertinent part that a defective product is unreasonably dangerous where it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Vincer* 69 Wis. 2d at 331.

product not unreasonably dangerous to the ordinary user or consumer might well be unreasonably dangerous to the ordinary bystander.

*Id.* at 809 (citation omitted). The Horsts seize upon this language to demonstrate that Wisconsin does indeed recognize a bystander contemplation test. We disagree. The *Komanekin* court offers this aside about bystanders, clearly dicta, with some hesitation. The court casts the broadened standard for unreasonable dangerousness as "presumable" rather than express. The *Komanekin* court's language demonstrates some uncertainty about Wisconsin's stance on a manufacturer's duty to bystanders.

¶ 20. If there was any doubt that the consumer contemplation test is the applicable standard in all strict products liability cases, our supreme court extinguished it in *Green*. There, the court declined to "abandon or qualify this state's *exclusive reliance* on the consumer-contemplation test," and pronounced that "Wisconsin is committed to the consumer-contemplation test in *all* strict products liability cases." *Green*, 245 Wis. 2d 772, ¶ 46 (emphasis added). With this mandate from the supreme court, we hold that the circuit court properly submitted Wis JI—Civil 3260, which reflects the consumer contemplation test, to the jury. We further hold that the court's supplement to the instruction accurately stated that bystanders are protected by the doctrine of strict liability if the bystander is injured by a defective product that is unreasonably dangerous to the ordinary user or consumer.

¶ 21. Because we have determined that the circuit court's jury instruction was not an erroneous exercise of discretion, we need not delve into the second part of the Horsts' argument: specifically, that jury instruction

433

resulted in prejudicial error. *See Nowatske v. Osterloh*, 198 Wis. 2d 419, 429, 543 N.W.2d 265 (1996), *overruled on other grounds by Nommensen v. American Continental Ins. Co.*, 2001 WI 112, 246 Wis. 2d 132, 629 N.W.2d 301 (even where a circuit court erroneously instructed the jury, a new trial is not warranted unless the error was prejudicial). When the resolution of one issue resolves the appeal, we need not address additional issues presented. *Barber v. Weber*, 2006 WI App 88, ¶ 19, 292 Wis. 2d 426, 715 N.W.2d 683.

## CONCLUSION

¶ 22. The circuit court instructed the jury to apply the consumer contemplation test, which is the legal principle to be applied in all strict products liability cases. *See Green*, 245 Wis. 2d 772, ¶ 46. Though the *Howes* court extended the strict liability doctrine to bystanders, recent supreme court case law teaches that the bystander claimant must nonetheless demonstrate an unreasonably dangerous defect by application of the consumer contemplation test. Accordingly, we affirm the judgment of the circuit court and the order denying the Horsts' motion for a new trial.

*By the Court.*—Judgment and order affirmed.